RACINE HARLEY-DAVIDSON, INC.,
Petitioner-Respondent-Petitioner,

v.

STATE of Wisconsin Division
of Hearings and Appeals,
Respondent,

HARLEY-DAVIDSON MOTOR COMPANY, INC.,
Participant-Appellant.

Supreme Court

*No. 2003AP2628. Oral argument November 8, 2005.
—Decided July 6, 2006.*

2006 WI 86

(Also reported in 717 N.W.2d 184.)

PROSSER, J., concurs.

ROGGENSACK, J., concurs.

WILCOX and BUTLER, J.J., join.

For the petitioner-respondent-petitioner there were briefs by *Paul R. Norman, Sarah A. Zylstra* and *Boardman, Suhr, Curry & Field LLP,* Madison, and oral argument by *Sarah A. Zylstra.*

For the participant-appellant there were briefs by *Peter J. Stone, Kelli A. Taffora* and *Foley & Lardner LLP,* Milwaukee, and oral argument by *Peter J. Stone.*

An amicus curiae brief was filed by *Brian E. Butler, Michelle Affatati* and *Stafford Rosenbaum LLP,* Madison, on behalf of the Wisconsin Automobile and Truck

Dealers Association, and there was oral argument by *Brian E. Butler.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. Racine Harley-Davidson, Inc. (Racine H-D) seeks review of a published decision of the court of appeals.[1]

¶ 2. The court of appeals reversed an order of the circuit court for Racine County, Charles H. Constantine, Judge, and reinstated a ruling of the Department of Administration, Division of Hearings and Appeals, granting summary judgment to Harley-Davidson Motor Company (Harley-Davidson) against Racine H-D.

¶ 3. The court of appeals gave great weight deference to the decision of the Division of Hearings and Appeals that Harley-Davidson's assignment of territory to Racine H-D, namely a zip code list,[2] is not part of the motor vehicle dealer agreement between the parties under Wis. Stat. § 218.0116(8).[3] Accordingly, the court of appeals determined that Harley-Davidson's unilateral modification of the assignment of territory did not trigger the requirement in Wis. Stat. § 218.0116(8) of an administrative determination of good cause for the modification of a motor vehicle dealer agreement.

¶ 4. In contrast, the circuit court had overturned the decision of the Division of Hearings and Appeals. The circuit court concluded that Harley-Davidson's zip code assignment of territory to Racine H-D is part of the motor vehicle dealer agreement between the parties under Wis. Stat. § 218.0116(8) and that the cause

---

[1] *Racine Harley-Davidson v. Div. of Hearings & Appeals,* 2005 WI App 6, 278 Wis. 2d 508, 692 N.W.2d 670.

[2] Assignment of territory is sometimes also referred to as "area of sales responsibility" or "primary market area."

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

556

should be remanded to the Division of Hearings and Appeals to reinstate Racine H-D's amended complaint and to conduct further proceedings pursuant to Wis. Stat. § 218.0116(8).

¶ 5. The issue presented here is the same as that presented to the Division of Hearings and Appeals, the circuit court and the court of appeals, namely whether Harley-Davidson's assignment of territory to Racine H-D (a zip code list) is part of their motor vehicle dealer agreement under Wis. Stat. § 218.0116(8). If the assignment is part of their motor vehicle dealer agreement, the cause should be remanded to the circuit court for remand to the Division to reinstate the amended complaint and to conduct further proceedings to determine whether Racine H-D should prevail on its claim under Wis. Stat. § 218.0116(8).

¶ 6. We conclude that read together, Wis. Stat. § 218.0101(1) and (13); § 218.0114(9) and (11); and § 218.0116(1)(r), (7), and (8); and the purpose of §§ 218.0101 to 218.0163, support the conclusion that a more reasonable reading of the statutes than that of the Division of Hearings and Appeals is that a manufacturer's assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 7. Accordingly we reverse the decision of the court of appeals and hold (1) that Harley-Davidson's assignment of territory (the zip code list) to Racine H-D is part of the motor vehicle dealer agreement between Harley-Davidson and Racine H-D under Wis. Stat. § 218.0116(8); and (2) that the cause should be remanded to the circuit court for remand to the Division of Hearings and Appeals to reinstate Racine H-D's complaint and to conduct further proceedings under Wis. Stat. § 218.0116(8) consistent with this opinion.

I

¶ 8. To determine whether the assignment of territory (the zip code list) is part of the motor vehicle dealer agreement under § 218.0116(8), we must first address the threshold issue of the proper level of deference to be given to the decision of the Division of Hearings and Appeals.[4]

¶ 9. The court requested supplemental briefs from the parties on the level of deference to be accorded the decision of the Division of Hearings and Appeals, "considering Wis. Stat. §§ 227.43(1)(bg) and 227.46(3), and the following cases (and any other statute or case the parties consider applicable to the subject): *State ex rel. Kaminski v. Schwarz,* 2001 WI 94, ¶¶ 16, 21, 245 Wis. 2d 310, 630 N.W.2d 164; *Buettner v. DHFS,* 2003 WI App 90, ¶¶ 6–8, 264 Wis. 2d 700, 663 N.W.2d 282; *Town of Barton v. Division of Hearings and Appeals,* 2002 WI App 169, ¶ 10, 256 Wis. 2d 628, 649 N.W.2d 293; *Artac v. DHFS,* 2000 WI App 88, ¶ 13, ¶ 13 n.6,

---

[4] When this court reviews a decision of an administrative agency, it ordinarily reviews the agency decision, not the decision of the court of appeals or the circuit court. *West Bend Co. v. LIRC,* 149 Wis. 2d 110, 117, 438 N.W.2d 823 (1989).

The meaning of the word "agency" in ch. 227, and whether "agency" includes the Division of Hearings and Appeals for purposes of service, is discussed in *All Star Rent a Car, Inc. v. DOT,* 2006 WI 85, 292 Wis. 2d 615, 716 N.W.2d 506. The definition of "agency" in ch. 227 is not relevant in the instant case because Wis. Stat. § 218.0116(9) provides that any person aggrieved by a decision of the Division may have review of the decision as provided in ch. 227. Section 227.52 provides for judicial review of any "administrative decision" without linking that decision to an agency. *See also* Wis. Stat. § 227.46(2m) . (providing for judicial review of Division decisions made under Wis. Stat. § 227.43(1)(bg)).

234 Wis. 2d 480, 610 N.W.2d 115; *Sea View v. DNR,* 223 Wis. 2d 138, 145–49, 588 N.W.2d 667 (Ct. App. 1998); *Roehl Transport, Inc. v. Division of Hearings and Appeals,* 213 Wis. 2d 452, 460–61, 570 N.W.2d 864 (Ct. App. 1997)."

¶ 10. The issue of deference to be accorded a decision involving the Division of Hearings and Appeals is also raised in *Hilton v. DNR,* 2006 WI 84, ___ Wis. 2d ___, 717 N.W.2d 166, mandated this date.

■

¶ 11. Although statutory interpretation is ordinarily a question of law determined independently by a court, a court may accord an agency's interpretation of a statute great weight deference or due weight deference.[5] The standard of review of an agency interpreta-

---

[5] *Keup v. DHFS,* 2004 WI 16, ¶ 12, 269 Wis. 2d 59, 675 N.W.2d 755 ("This issue involves statutory interpretation, which is a question of law that this court reviews de novo. Thus, we are not bound by an administrative agency's determination. Nevertheless, we have generally used one of three standards of review, with varying degrees of deference, to review an agency's conclusions of law or statutory interpretation." (citations omitted)); *Brown v. LIRC,* 2003 WI 142, ¶¶ 11–13, 267 Wis. 2d 31, 671 N.W.2d 279 ("The interpretation of a statute presents a question of law. The application of a statutory standard to a fact situation is ordinarily a question of law for the courts. . . . Nevertheless, labeling an issue as a question of law does not mean that a court may disregard an agency's determination. . . . The appropriate level of scrutiny a court should use in reviewing an agency's decision on questions of law depends on the comparative institutional capabilities and qualifications of the court and the agency to make a legal determination on a particular issue"); *Dodgeland Educ. Ass'n v. WERC,* 2002 WI 22, ¶ 22, 250 Wis. 2d 357, 639 N.W.2d 733 ("Whether WERC properly interpreted Wis. Stat. § 111.70 is a question of law and we are not bound by WERC's interpretation. In certain circum-

tion and application of a statute (and the deference to be accorded thereto) have been the subject of numerous

stances, however, courts should defer to an administrative agency's interpretation of a statute." (citations omitted)); *Ide v. LIRC*, 224 Wis. 2d 159, 166, 589 N.W.2d 363 (1999) ("Whether the facts, as found by LIRC, fulfill a particular legal standard is a question of law which we review de novo. . . . When reviewing questions of law, we apply one of three levels of deference to the agency's interpretation . . . ."); *LaCrosse Queen, Inc. v. DOR*, 208 Wis. 2d 439, 445–46, 561 N.W.2d 686 (1997) (court "review[s] questions of law de novo" and "may substitute [its] judgment for that of the [Tax Appeals] Commission" but will accord deference when agency possesses particular expertise in an area of law); *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996) ("Although we are not bound by LIRC's interpretation, we do defer to agency interpretations in certain situations."); *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995) ("The guiding principle is that statutory interpretation is a question of law which courts decide de novo. Furthermore, a court is not bound by an agency's interpretation of a statute. As important, however, is the principle that courts should defer to an administrative agency's interpretation of a statute in certain situations." (citations omitted)); *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994) ("The interpretation of a statute presents a question of law, and the 'blackletter' rule is that a court is not bound by an agency's interpretation. Nevertheless courts frequently refrain from substituting their interpretation of a statute for that of the agency charged with the administration of a law. . . . [C]ourts frequently give deference to the interpretation of statutes by administrative agencies charged with their enforcement."); *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993) (same); *Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 890–91, 498 N.W.2d 826 (1993) (same); *Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992) (same); *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11–12, 357 N.W.2d 534 (1984) ("Generally questions relating to interpretation and application of statutes are labeled questions of law, and the blackletter rule is that a court is not bound by an agency's conclusions of law.

cases, as this opinion demonstrates, and much law review commentary.[6]

¶ 12. In an attempt to clarify prior statements of the standard of review for agency interpretation and application of statutes, the court set forth three levels of deference of agency interpretations of statutes in adjudicative matters in *Jicha v. DILHR,* 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992) and *Sauk County v. WERC,* 165 Wis. 2d 406, 413–14, 477 N.W.2d 267 (1991):

Courts, however, frequently refrain from exercising the power to substitute their interpretation or application of a statute for that of an agency charged with the administration of the law.").

[6] *See* Salvatore Massa, *The Standards of Review for Agency Interpretations of Statutes in Wisconsin,* 83 Marq. L. Rev. 597 (2000); Patrick M. Zabrowski, Comment, *The Standard of Review of Administrative Rules in Wisconsin,* 1982 Wis. L. Rev. 691, (1982); Paul B. Hewitt, Comment, *The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin,* 1973 Wis. L. Rev. 554 (1973).

At the federal level too, "one of the most persistently intriguing puzzles has been to define the appropriate judicial and administrative roles in the interpretation of regulatory statutes. . . . To determine 'what the law is' in the context of an actual controversy that turns on a question of statutory meaning is the quintessential judicial function. At the same time, however, such questions are so bound up with successful administration of the regulatory scheme that it may seem only sensible to give principle interpretive responsibility to the 'expert' agency that lives with the statute constantly." Cynthia R. Farina, *Statutory Interpretation and the Balance of Power in the Administrative State,* 89 Colum. L. Rev. 452, 452–53 (1989).

For discussions of the deference given to federal agency interpretation of statutes, see *United States v. Mead Corp.,* 533 U.S. 218 (2001); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984); 6 Jacob A. Stein et al., *Administrative Law* § 51.01 (Rel. 75–8/02 Pub. 301).

great weight deference, due weight deference, and no deference.[7]

¶ 13. These levels of deference take into account the comparative institutional qualifications and capabilities of the court and the administrative agency.[8] The levels of deference are in accord with Wis. Stat. § 227.57(10), in which the legislature provides that upon review of an agency's decision, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." *See also* Wis. Stat. § 102.23(1)(e) (an order or award of the Labor and Industry Review Commission (LIRC) "shall be set aside only upon the following grounds: 1. That the commission acted without or in excess of its powers. 2. That the order or award was procured by fraud. 3. That the findings of fact by the commission do not support the order or award."). The legislature has thus entrusted responsibility to the agencies.

¶ 14. By granting deference to agency interpretations, the court has not abdicated, and should not abdicate, its authority and responsibility to interpret statutes and decide questions of law. Some cases, how-

---

[7] For prior case law explaining the standard of review of an agency interpretation and application of a statute, including a comparison of the court's "analytical" approach to agency deference and "practical" or "policy" approach, see, *e.g., DOR v. Exxon Corp.,* 90 Wis. 2d 700, 712–14, 281 N.W.2d 94 (1979); *DOR v. Milwaukee Ref. Corp.,* 80 Wis. 2d 44, 48, 257 N.W.2d 855 (1977); *Pabst v. Dep't of Taxation,* 19 Wis. 2d 313, 322–23, 120 N.W.2d 77 (1963).

[8] *Brown v. LIRC,* 2003 WI 142, ¶ 13, 267 Wis. 2d 31, 671 N.W.2d 279 (citing *State ex rel. Parker v. Sullivan,* 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994)).

ever, mistakenly fail to state, before launching into a discussion of the levels of deference, that the interpretation and application of a statute is a question of law to be determined by a court.[9] In any event, it is the court's responsibility to decide questions of law and determine whether deference is due and what level of deference is due to an agency interpretation and application of a statute. The court determines the appropriate level of deference by comparing the institutional qualifications and capabilities of the court and the agency by considering, for example, whether the legislature has charged the agency with administration of the statute, whether the agency has expertise, whether the agency interpretation is one of long standing, and whether the agency interpretation will provide uniformity and consistency.

¶ 15. Furthermore, giving deference to the agency interpretation does not mean that the court accepts the agency interpretation without a critical eye. The court itself must always interpret the statute to determine the reasonableness of the agency interpretation. Only reasonable agency interpretations are given any deference.

¶ 16. A reviewing court accords an agency's statutory interpretation great weight deference when each of

[9] *See, e.g., Pinczkowski v. Milwaukee County,* 2005 WI 161, ¶¶ 62–65, 286 Wis. 2d 339, 706 N.W.2d 642 (discussing levels of deference, but not stating the court's ultimate authority to decide questions of law); *Clean Wisconsin, Inc. v. Pub. Serv. Comm'n,* 2005 WI 93, ¶¶ 37–43, 282 Wis. 2d 250, 700 N.W.2d 768 (same); *Crystal Lake Cheese Factory v. LIRC,* 2003 WI 106, ¶¶ 23–25, 28–30, 264 Wis. 2d 200, 664 N.W.2d 651 (same); *Kitten v. DWD,* 2002 WI 54, ¶¶ 26–29, 252 Wis. 2d 561, 644 N.W.2d 649 (same).

the following requirements are met: (1) the agency is charged by the legislature with the duty of administering the statute; (2) the agency interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming its interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute.[10]

¶ 17. When a reviewing court applies great weight deference, it sustains an agency's reasonable statutory interpretation, even if the court concludes that another interpretation is equally reasonable, or even more reasonable, than that of the agency.[11] An agency's conclusion of law is unreasonable and may be reversed by a reviewing court if it directly contravenes the statute or the federal or state constitution, if it is clearly contrary to the legislative intent, history, or purpose of the statute, or if it is without a rational basis.[12]

¶ 18. A reviewing court accords an agency's statutory interpretation due weight deference when the

---

[10] *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996) (citing *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)).

[11] *UFE Inc.,* 201 Wis. 2d at 287.

"[W]hen the expertise of the . . . agency is significant to the value judgment (to the determination of a legal question)," if the agency's decision is reasonable it will be accepted by courts "irrespective of whether there may have been some other reasonable interpretation or application [of the statute]." *Nottelson v. DIHLR,* 94 Wis. 2d 106, 117 & n.10, 287 N.W.2d 763 (1980).

[12] *Brown,* 267 Wis. 2d 31, ¶ 19 (citing *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995); *Barron Elec. Co-op. v. Pub. Serv. Comm'n,* 212 Wis. 2d 752, 766, 569 N.W.2d 726 (Ct. App. 1997)).

agency has some experience in an area but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute.[13] Due weight deference is based on the fact that the legislature has charged the agency with the enforcement of the statute in question, not on the expertise of the agency. When a reviewing court applies due weight deference, it sustains an agency's statutory interpretation if it is not contrary to the clear meaning of the statute, unless the reviewing court determines that a more reasonable interpretation exists.[14]

¶ 19. A reviewing court accords an agency's statutory interpretation no deference when any of the following conditions is met: (1) the issue is one of first impression; (2) the agency has no experience or expertise in deciding the legal issue presented; or (3) the agency's position on the issue has been so inconsistent as to provide no real guidance.[15] When a reviewing court accords an agency's statutory interpretation no deference, the court interprets the statute independently of the agency's interpretation and in effect adopts an interpretation that the court determines is the most reasonable interpretation.[16]

¶ 20. Thus, due weight deference and no deference to an agency's interpretation of a statute are

---

[13] *UFE Inc.*, 201 Wis. 2d at 286.

[14] *Id.* at 287.

[15] *Id.* at 285.

[16] *Harnischfeger Corp.*, 196 Wis. 2d at 660 n.4 (citing *Village of Whitefish Bay v. Employment Relations Bd.*, 34 Wis. 2d 432, 445, 149 N.W.2d 662 (1967)).

similar. Under both due weight deference and no deference, the reviewing court may adopt, without regard for the agency's interpretation, what it views as the most reasonable interpretation of the statute. When due weight deference is accorded an agency, however, a reviewing court will not reverse the agency's statutory interpretation when an alternative interpretation is equally reasonable.[17] In contrast, in a no deference review of an agency's statutory interpretation, the reviewing court merely benefits from the agency's determination and may reverse the agency's interpretation even when an alternative statutory interpretation is equally reasonable to the interpretation of the agency.[18]

¶ 21. In the present case two administrative entities implement the licensing system. The parties agree that although the Department of Transportation licenses both Harley-Davidson and Racine H-D under Wis. Stat. §§ 218.101 to 218.0163 and supervises both Harley-Davidson's and Racine H-D's licenses,[19] the Division of Hearings and Appeals, not the Department of Transportation, is charged by the legislature with hearing disputes under Wis. Stat. § 218.0116(8).

¶ 22. A dealer seeking to challenge a proposed modification of its motor vehicle dealer agreement under Wis. Stat. § 218.0116(8) must file a complaint with the Department of Transportation and the Division of Hearings and Appeals, and the Division must schedule a hearing and decide the matter.[20]

---

[17] *UFE Inc.,* 201 Wis. 2d at 287 n.3.

[18] *Id.*

[19] Wis. Stat. § 218.0111.

[20] Wisconsin Stat. § 218.0116(8)(a) provides in relevant part:

¶ 23. The administrator of the Division of Hearings and Appeals is directed by statute, Wis. Stat. § 227.43(1)(bg), to assign a hearing examiner to preside over any hearing or review under Wis. Stat. § 218.0116(8)(a), the statute at issue in the instant case.[21] Although the statute governing the Division requires that the system shall ensure, to the extent practicable, that hearing examiners are assigned to different subjects on a rotating basis, the statute also allows the system to include the establishment of pools of examiners responsible for certain subjects.[22] It appears that the administrator of the Division has estab-

[T]he motor vehicle dealer may file with the department of transportation and the division of hearings and appeals and serve upon the respondent a complaint for a determination of whether there is good cause for permitting the proposed modification. The division of hearings and appeals shall promptly schedule a hearing and decide the matter.

[21] Wisconsin Stat. § 227.43(1)(bg) also grants the Division jurisdiction to appoint a hearing examiner to hear and preside over hearings:

(1) The administrator of the division of hearings and appeals in the department of administration shall:

. . . .

(bg) Assign a hearing examiner to preside over any hearing or review under ss. . . . 86.16(5) . . . 218.0116 . . . (8)(a) . . . .

*See also* Wis. Stat. § 218.0116(8)(a).

The statutes refer to a "hearing examiner." The Division refers to the hearing examiner as an "administrative law judge."

[22] Wisconsin Stat. § 227.43(1g) states:

The administrator of the division of hearings and appeals shall establish a system for assigning hearing examiners to preside over any hearing under this section. The system shall ensure, to the extent practicable, that hearing examiners are assigned to differ-

lished a system for assigning hearing examiners that designates a particular examiner or pool of examiners to be responsible for cases arising under §§ 218.0110 to 218.0163 to enable these examiners to develop expertise.

¶ 24. Each party adversely affected by a proposed decision of a hearing examiner under Wis. Stat. § 227.43(1)(bg) may seek review by the administrator of the Division of Hearings and Appeals.[23] The decision of the administrator of the Division "is a final decision of the agency subject to judicial review under s. 227.52."[24] Thus the administrator of the Division helps achieve uniformity and consistency in adjudicative proceedings. In the instant case the administrator did modify the decision of the hearing examiner.

¶ 25. The decision of the Division of Hearings and Appeals in a dispute under § 218.0116(8) is final[25] (not subject to adoption, approval, or modification by the

---

ent subjects on a rotating basis. The system may include the establishment of pools of examiners responsible for certain subjects.

[23] Wis. Stat. § 227.46(2m).

[24] *Id.*

[25] Wisconsin Stat. § 218.0116(8)(c) provides:

The decision of the division of hearings and appeals shall be in writing and shall contain findings of fact and a determination of whether there is good cause for permitting the proposed modification. The division of hearings and appeals shall deliver copies of the decision to the parties personally or by registered mail. The decision is final upon its delivery or mailing and no reconsideration or rehearing by the division of hearings and appeals is permitted.

Wisconsin Stat. § 227.46(2m) provides, in relevant part:

In any hearing or review assigned to a hearing examiner under s. 227.43 (1)(bg) [which includes a hearing under s. 218.0116(8)(a)] . . . [t]he decision of the administrator of the division of hearings and appeals ,is a final decision of the agency subject to judicial review under s. 227.52.

Department of Transportation)[26] and an aggrieved party may seek judicial review as provided in chapter 227 of the statutes.[27] The Department of Transportation may petition for judicial review.[28]

¶ 26. In debating whether this court should give any deference to the statutory interpretation of the Division of Hearings and Appeals, the parties agree that the Division, including the hearing examiner in the present case, handles many Department of Transportation cases involving the motor vehicle statutes, but that neither the Division nor a hearing examiner has specifically addressed whether a manufacturer's modification of a dealer's territory is a modification of the parties' agreement under Wis. Stat. § 218.0116(8). Nor has the Division addressed the definitions of "agreement" and "franchise" under §§ 218.0101(1) and 218.0101(13). The parties disagree, however, about what deference, if any, is due to the Division's decision in the present case.

---

[26] Wisconsin Stat. § 227.46(3) states, in relevant part:

With respect to contested cases except a hearing or review assigned to a hearing examiner under s. 227.43(1)(bg) [which includes a hearing under § 218.0116(8)(a)], an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency . . . .

Thus, because the Division of Hearings and Appeals assigns the hearing examiner for § 218.0116(8) cases under § 227.043(1)(bg), the Department of Transportation is not permitted to adopt the decision of the Division.

[27] Wisconsin Stat. § 218.0116(9) states:

Any person in interest aggrieved by a decision of the division of hearings and appeals or an order of the division of banking may have a review of the decision as provided in ch. 227.

[28] Wis. Stat. § 227.46(2m).

¶ 27. Harley-Davidson argues that the Division's decision interpreting the motor vehicle dealer statutes should be afforded great weight deference or, at a minimum, due weight deference. Harley-Davidson urges great weight or due weight deference because the Division of Hearings and Appeals is charged with enforcing the statutory scheme and uses its motor vehicle distribution expertise to interpret and apply the phrase "motor vehicle dealer agreement."

¶ 28. Racine H-D and amicus Wisconsin Automobile and Truck Dealers Association contend that this court should not accord any deference to the statutory interpretation of the Division and should interpret and apply the statute independently of the Division. They argue that the Division has never before addressed whether a manufacturer's modification of a dealer's territory is a modification of the parties' agreement under Wis. Stat. § 218.0116(8) and that accordingly the Division has no expertise or specialized knowledge in forming the interpretation.

¶ 29. In the instant case the final decision in the dispute is not that of the Department of Transportation but rather is that of the Department of Administration, Division of Hearings and Appeals.[29] Under the statutes, we review the decision of the Division of Hearings and Appeals. The Department of Transportation, which has statutory licensing authority, is at odds with the Division of Hearings and Appeals, which has statutory authority to decide disputes under Wis. Stat. § 218.0116(8) relating to modification of a motor vehicle dealer agreement.

¶ 30. The question presented in the present case is whether the statutory interpretation of an adminis-

---

[29] *See* Wis. Stat. § 218.0116(8)(c).

trative entity charged solely with an adjudicative function in certain disputes should be accorded any deference by the courts. Prior cases have answered this question in the affirmative.[30]

¶ 31. The concept of deference to statutory interpretations by agencies has been developed and applied in case law involving numerous administrative agencies, including agencies that perform purely adjudicative functions. Some agencies, like the Labor and Industry Review Commission (LIRC), to which deference has been accorded, have solely final adjudicative functions.[31] Other agencies are charged by statute with primary substantive administration and rule-making powers and also with interpreting statutes to resolve

---

[30] The court has reviewed and accorded deference to the statutory interpretation of the adjudicative agency without deference to the other agency. *See, e.g., DILHR v. LIRC,* 161 Wis. 2d 231, 241–45, 467 N.W.2d 545 (1991) (court accords deference to LIRC's statutory interpretation, not DILHR's, even though DILHR is primary agency administering unemployment compensation law; court unpersuaded by DILHR's argument to the contrary); *Dep't of Transp. v. Comm'r of Transp.,* 159 Wis. 2d 271, 463 N.W.2d 870 (Ct. App. 1990) (court reviews decision of Commissioner of Transportation, the adjudicative predecessor to the Division of Hearings and Appeals for Department of Transportation cases (with adjudicative authority to grant or deny an application for a motor vehicle dealer's license), according no deference to the Department of Transportation, the agency charged with other duties under the motor vehicle dealer code; Wis. Stat. § 218.01(3)(b) (1989–90)).

[31] *See, e.g., UFE, Inc.,* 201 Wis. 2d at 281–88; *Harnischfeger Corp.,* 196 Wis. 2d at 659–63; *Lisney v. LIRC,* 171 Wis. 2d 499, 505–07, 493 N.W.2d 499 (1992); *DILHR v. LIRC,* 161 Wis. 2d 231, 241–47, 467 N.W.2d 545 (1991) (deference was due to LIRC, not DILHR, reasoning that the legislature intended LIRC to have final review authority over disputed DILHR decisions; Wis. Stat. §§ 108.09(6)-(7), 108.10(3) (1989–90)).

disputes.[32] These agencies likewise have been accorded deference.

¶ 32. Because many of the cases according deference to statutory interpretations involved decisions of LIRC,[33] it is useful to compare the Division of Hearings and Appeals to LIRC. LIRC is part of the Department of Workforce Development.[34] The Division is part of the Department of Administration.[35] Each has independent authority to make rules within the context of its authority.[36] Each exercises its powers, duties, and func-

---

[32] *See, e.g., Clean Wisconsin, Inc. v. Pub. Serv. Comm'n,* 2005 WI 93, ¶¶ 35–44, 282 Wis. 2d 250, 700 N.W.2d 768 (Wis. Stat. § 196.02 (2001–02)); *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12–14, 357 N.W.2d 534 (1984) (Wis. Stat. § 111.70(4) (1979–80)).

[33] *See, e.g., Brown,* 267 Wis. 2d 31, ¶ 17 (great weight deference); *UFE, Inc.,* 201 Wis. 2d at 286–87 (due weight deference); *Harnischfeger Corp.,* 196 Wis. 2d at 660 (great weight deference); *Lisney,* 171 Wis. 2d at 522 (no deference because statutory language abides only one reasonable interpretation); *DILHR v. LIRC,* 161 Wis. 2d 231, 241–47, 467 N.W.2d 545 (1991) (LIRC, not DILHR, is the appropriate body to which deference is accorded).

[34] Wis. Stat. § 15.225(1).

[35] Wis. Stat. § 15.103(1).

[36] Wisconsin Stat. § 103.04(2) provides:

(2) Notwithstanding s. 227.11, the commission [LIRC] may not promulgate rules except that it may promulgate its rules of procedure.

(Wisconsin Stat. § 227.11 provides for the general rule-making authority of administrative agencies.)

Under Wis. Stat. § 227.43(1)(d), "The administrator of the division of hearings and appeals in the department of administration shall . . . (d) Promulgate rules relating to the exercise of the administrator's and the division's powers and duties under this section."

tions independently of the head of the department to which it is connected.[37]

¶ 33. LIRC handles appeals addressing a variety of subject matters.[38] In 2005, LIRC issued a total of 3,473 decisions.[39] The Division of Hearings and Appeals handles appeals addressing a variety of subject matters.[40] In 1998–99, the last year for which complete

[37] Wisconsin Stat. § 15.03, applying to the Division of Hearings and Appeals and LIRC, provides in relevant part:

Any division, office, commission, council or board attached under this section to a department or independent agency or a specified division thereof shall be a distinct unit of that department, independent agency or specified division. Any division, office, commission, council or board so attached shall exercise its powers, duties and functions prescribed by law, including rule making, licensing and regulation, and operational planning within the area of program responsibility of the division, office, commission, council or board, independently of the head of the department or independent agency, but budgeting, program coordination and related management functions shall be performed under the direction and supervision of the head of the department or independent agency . . . .

[38] The subjects include unemployment insurance, worker's compensation, equal rights, and employer tax status.

[39] Statistics available at LIRC website, http://www.dwd. state.wi.us/lirc/lrc_05st.htm/ (last visited June 27, 2006).

LIRC decided 2,845 unemployment insurance cases, 455 worker's compensation cases, 144 equal rights cases, and 29 employer tax status cases.

[40] The subjects include medical assistance, food stamps, nursing home and medical facility licensing, crime victim compensation, special education cases, and parole and probation review. Hearing information available at Division of Hearings and Appeals website, http://dha.state.wi.us/home/ (last visited June 27, 2006). A complete list of the agencies for which the Division conducts hearings, and the subject matters those hearings cover, is available on the Division website.

statistics are available, the Division conducted a total of 4,942 hearings.[41] Hearings are ordinarily conducted by hearing examiners.

¶ 34. The three LIRC commissioners are appointed by the governor with the advice and consent of the Senate and they serve six-year terms.[42] The administrator of the Division of Hearings and Appeals is appointed by the Secretary of the Department of Administration,[43] who is appointed by the governor with the advice and consent of the Senate.[44] The administrator is in the classified service.[45]

¶ 35. Thus, both LIRC and the Division are adjudicative bodies charged only with resolving certain disputes. Neither entity makes rules, except regarding the procedure by which the adjudications proceed. Both address a wide variety of subject matters in handling appeals.[46] LIRC's relationship with the Department of Workforce Development is not substantively different

---

[41] Statistics available in portable document format at the website of the Wisconsin State Legislature, http://www.legis. state.wi.us/lab/reports/00–7full.pdf (last visited June 27, 2006).

[42] Wis. Stat. §§ 15.01(2), 15.06(1)(a). The LIRC chairperson is elected by the commissioners from among their own members for two-year terms. Wis. Stat. § 15.06(2)(a).

[43] Wis. Stat. § 15.103.

[44] Wis. Stat. § 15.05(1)(a).

[45] Wis. Stat. § 15.103(1).

[46] There are, of course, differences between LIRC and the Division. For example, the hearing examiners who conduct the initial hearings reviewed on appeal by LIRC are not employed by LIRC; they are employed by the Department of Workforce Development. The hearing examiners in Division of Hearings and Appeals cases, on the other hand, are employees of the Division.

from the Division's relationship with the Department of Administration and the entities for which it conducts adjudicative proceedings.

¶ 36. The Division of Hearings and Appeals is not the only adjudicative body that is attached to the Department of Administration. The Tax Appeals Commission is attached to the Department of Administration as well.[47] The Tax Appeals Commission handles all appeals in a wide variety of tax matters, subject to judicial review under ch. 227.[48] The agency with primary authority over non-adjudicated tax matters is the Department of Revenue.[49] This court has accorded deference to decisions of the Tax Appeals Commission.[50]

---

[47] Wis. Stat. § 15.105(1) ("There is created a tax appeals commission which is attached to the department of administration under s. 15.03."); *see also 2001–2003 Biennial Report of the Wisconsin Tax Appeals Commission,* at 1, *available at* http://www.doa.state.wi.us/docs_view2.asp?docid=1680 (last visited June 27, 2006) ("The Tax Appeals Commission is an independent state agency. Its organization, powers, duties, and functions are governed by Chapter 73 of the Wisconsin Statutes. Pursuant to Wis. Stat. § 15.03, budgeting, program coordination, and related management functions are performed by the Commission, under the general direction and supervision of the Secretary of the Department of Administration.").

[48] Wis. Stat. § 73.01.

*See 2001–2003 Biennial Report of the Wisconsin Tax Appeals Commission,* at 1, *available at* http://www.doa.state. wi.us/docs_view2.asp?docid=1680 (last visited June 27, 2006), for a list of the types of tax appeals handled by the Tax Appeals Commission.

[49] Wis. Stat. § 73.03.

[50] *See, e.g., Lincoln Savings Bank, S.A. v. DOR,* 215 Wis. 2d 430, 443, 573 N.W.2d 522 (1998) (citing *UFE, Inc.,* 201 Wis. 2d at 282 n.2, granting no deference to interpretation and application of statute by Tax Appeals Commission when interpreta-

¶ 37. If deference is accorded to statutory interpretation decisions by LIRC and the Tax Appeals Commission, both totally adjudicative agencies, the question remains whether deference should be denied to statutory interpretation decisions of the Division of Hearings and Appeals for the sole reason that the Division is a totally adjudicative entity.

¶ 38. The court of appeals has had several opportunities to determine whether to apply levels of deference to statutory interpretations rendered by the Division of Hearings and Appeals.

¶ 39. In *Roehl Transport, Inc. v. Division of Hearings & Appeals,* 213 Wis. 2d 452, 570 N.W.2d 864 (Ct. App. 1997), a trucking company challenged the imposition of a tax by the Department of Transportation based on a fuel taxation system under Wis. Stat. § 341.45(1g)(a), which the Department was charged

tion contravened plain language of statute); *LaCrosse Queen, Inc. v. DOR,* 208 Wis. 2d 439, 445–46, 561 N.W.2d 686 (1997) (granting no deference to interpretation and application of statute by Tax Appeals Commission when Commission had no expertise on the meaning of the term "interstate commerce"); *William Wrigley, Jr., Co. v. DOR,* 176 Wis. 2d 795, 801, 500 N.W.2d 667 (1993) (granting deference to interpretation and application of a statute by Tax Appeals Commission because Commission is "the final administrative authority" for review of Department of Revenue decisions and is experienced in applying particular tax statute in issue); *DOR v. Heritage Mut. Ins. Co.,* 208 Wis. 2d 582, 589, 561 N.W.2d 344 (Ct. App. 1997) (granting deference to interpretation and application of statute by Tax Appeals Commission because Commission "has primary responsibility for [tax] policy determinations" and has "expertise and experience in construing the tax laws generally, and the interrelationship between the federal and state tax laws specifically.").

with administering.[51] The trucking firm's challenge was heard by a hearing examiner for the Division of Hearings and Appeals, which rejected the challenge.[52] On appeal, the court of appeals reversed the decision of the Division, giving no deference to the Division's interpretation of the statute.[53]

¶ 40. The Division's adjudicative responsibilities under Wis. Stat. § 341.45 are set forth in § 227.43(1)(br).[54] That section (in contrast to § 227.43(1)(bg), the section applicable in the present case) authorizes the administrator of the Division of Hearings and Appeals to assign a hearing examiner to render decisions in disputes before the Department of Transportation in hearings not conducted by the Secretary of Transportation, including disputes such as the one in *Roehl Transport*. The Department of Transportation could have directed, but did not direct, that the hearing examiner's decision in *Roehl Transport* was the final decision of the Department under Wis. Stat. § 227.46(3)(a). Thus, the court of appeals reviewed the Division's decision as a final decision of the Division, not of the Department.

---

[51] *Roehl Transport, Inc. v. Div. of Hearings & Appeals,* 213 Wis. 2d 452, 460, 465–66, 570 N.W.2d 864 (Ct. App. 1997).

[52] *Id.* at 455, 457.

[53] *Id.* at 455–56.

[54] Wisconsin Stat. § 227.43 states, in relevant parts:

(1) The administrator of the division of hearings and appeals in the department of administration shall:

. . . .

(br) Assign a hearing examiner to preside over any hearing of a contested case which is required to be conducted by the department of transportation and which is not conducted by the secretary of transportation.

¶ 41. In determining the level of deference to be accorded the statutory interpretation of the Division of Hearings and Appeals, the court of appeals distinguished between an agency charged with the administration and enforcement of the statutes being interpreted and other administrative entities such as the Division of Hearings and Appeals that merely "provide management services and assistance to state agencies and departments."[55]

¶ 42. The court of appeals emphasized two elements in deciding whether to grant deference to the Division's decision in *Roehl Transport:* (1) Did the Division have experience, expertise, or expert knowledge? and (2) Did the legislature impose on the Division the duty to enforce or administer the statute?[56]

¶ 43. The court of appeals held in *Roehl Transport* that the Division of Hearings and Appeals had not shown that it possessed any experience, expertise, or specialized knowledge in the area of fuel or excise taxation.[57]

---

[55] *Roehl Transport,* 213 Wis. 2d at 460.

[56] *Id.* at 460–61.

[57] *Id.* at 461 (emphasis added). A review of the Division of Hearings and Appeals website indicates that *Roehl Transport* was the first case the Division ever heard regarding Wis. Stat. § 341.45. *See Decisions Issued by DHA for Dep't of Transportation, available at* http://dha.state.wi.us (last visited June 27, 2006).

In *Commissioner of Insurance v. Fiber Recovery, Inc.,* 2004 WI App 183, ¶ 15, 276 Wis. 2d 495, 687 N.W.2d 755, the court of appeals, following *Roehl Transport,* concluded that the court "may give deference to an agency decision on a question of law where the agency has expertise" but that the Division of Hearings and Appeals lacked expertise regarding ch. 605 and the construction of insurance contracts. The Division appar-

¶ 44. The court of appeals also concluded in *Roehl Transport* that the legislature had not imposed on the Division of Hearings and Appeals the duty to enforce or administer the statute because the Department of Transportation could have directed (although it did not direct) that the hearing examiner's decision in *Roehl Transport* was the final decision of the Department under Wis. Stat. § 227.46(3)(a).[58]

¶ 45. The principles of deference enunciated in *Roehl Transport* regarding decisions of the Division of Hearings and Appeals under Wis. Stat. § 227.43(1)(br) were applied and explained in *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 588 N.W.2d 667 (Ct. App. 1998), a case arising under § 227.43(1)(b).[59] As

ently heard the *Fiber Recovery* case under its authority under Wis. Stat. § 227.43(1m), which states:

> (1m) Upon the request of an agency that is not prohibited from contracting with a 3rd party for contested case hearing services, the administrator of the division of hearings and appeals in the department of administration may contract with the agency to provide the contested case hearing services and may assign a hearing examiner to preside over any hearing performed under such a contract.

[58] The court of appeals thus distinguished the Division of Hearings and Appeals from the Tax Appeals Commission, explaining that the Division is not "an independent agency—such as the Tax Appeals Commission—created for the express purpose of reviewing decisions of a line agency."

[59] Wisconsin Stat. § 227.43 states in relevant parts:

> (1) The administrator of the division of hearings and appeals in the department of administration shall:
>
> . . . .
>
> (b) Assign a hearing examiner to preside over any hearing of a contested case which is required to be conducted by the department of natural resources and which is not conducted by the secretary of natural resources.

579

with Wis. Stat. § 227.43(1)(br) (applied in *Roehl Transport*), § 227.43(1)(b) authorizes the administrator of the Division of Hearings and Appeals to assign a hearing examiner to render a decision in disputes such as the one in *Sea View* when the secretary of the Department of Natural Resources does not hear the matter.

¶ 46. In *Sea View,* a beach club had operated a 215–foot pier without a permit. Upon a complaint by Sea View's neighbor, the DNR conducted a site inspection and determined that a 190–foot pier would be more appropriate for the site and recommended granting a permit for a 190–foot pier. Sea View applied for this permit. Several neighbors objected to the permit and a contested hearing regarding the pier was held before the Division of Hearings and Appeals, as provided by Wis. Stat. § 227.43(1)(b). The hearing examiner concluded that a 110–foot pier would be more appropriate for the location.

¶ 47. In accordance with Wis. Admin. Code § NR 2.155(1),[60] the Department of Natural Resources

---

[60] Wisconsin Admin. Code § NR 2.155(1) (Sept., 2002) provides in relevant part:

Unless the department petitions for judicial review as provided in s. 227.46(8), Stats., the decision [of the Division of Hearings and Appeals hearing officer] shall be the final decision of the department, but may be reviewed in the manner described in s. NR 2.20.

Wisconsin Admin Code § NR 2.20 (Aug., 1997) provides:

(1) FILING. Any party to a contested case who is adversely affected by a final decision rendered after a contested case hearing on the matter may, within 20 days after issuance of the decision, file a written petition for review by the secretary or the secretary's designee. The petition shall specify in detail the grounds for the review, the relief which petitioner seeks and citation to supporting authorities which petitioner believes aids petitioner's case. The secretary may not delegate the review to anyone who has had prior involvement in either the hearing or decision-making process.

adopted the decision of the Division of Hearings and Appeals. The Department of Natural Resources had adopted Wis. Admin. Code § NR 2.155(1) pursuant to Wis. Stat. § 227.46(3),[61] which authorizes an agency to

(2) SERVICE. The petition for review under this section shall be served on the secretary as provided for in s. NR 2.03. Copies of the petition for review shall be served by regular mail upon the administrative law judge and upon all parties to the action.

(3) DECISION. Within 14 days of the receipt of the petition, the secretary shall decide whether or not to grant the requested review. If the secretary decides to grant the review, the secretary may order the filing of briefs, presentation of oral argument, or a rehearing of all or part of the evidence presented at the original public hearing, or any combination thereof.

(4) APPEAL. A petition for review pursuant to this section is not a prerequisite for appeal or review under ss. 227.52 to 227.53, Stats.

(5) SUSPENSION OF DECISIONS. The filing of a petition for review under this section does not suspend or delay the effective date of a decision, and the decision shall take effect on the date of the decision unless another date is set by the department or the administrative law judge, and shall continue in effect unless provisions of the decision are specifically suspended or delayed by the secretary in writing. Petition for suspension of the effective date of a decision shall be clearly specified in the petition for review under this section.

(6) EFFECT ON JUDICIAL REVIEW. An action pending under this section does not in any manner affect or extend the time limits for filing actions in circuit court for review under ss. 227.52 and 227.53, Stats.

*See Sea View Estates Beach Club, Inc. v. DNR,* 223 Wis. 2d 138, 144–45, 588 N.W.2d 667 (Ct. App. 1998).

[61] Wisconsin Stat. § 227.46(3) states:

With respect to contested cases except a hearing or review assigned to a hearing examiner under s. 227.43(1)(bg), an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency;

581

direct by rule or in a particular case that the Division of Hearings and Appeals decision be the final decision of the agency. The beach club appealed and argued that under *Roehl Transport,* the reviewing court owed no deference to the Division's interpretation of the statute in question.[62]

¶ 48. On appeal, the court of appeals distinguished *Sea View* from *Roehl Transport,* reasoning that the Department of Natural Resources had adopted the decision of the Division of Hearings and Appeals. Accordingly, in *Sea View* the court of appeals reviewed the decision of the Division of Hearings and Appeals as a final decision of the Department of Natural Resources[63] and determined that the Department of Natural Resources decision adopting the decision of the Division was entitled to great weight deference.[64] The Department of Natural Resources, according to the court of appeals, is the administrative agency charged by the legislature with general administrative duties and rulemaking authority and had expertise regarding the relevant statutory provisions.[65]

---

(b) Except as provided in sub. (2) or (4), direct that the record be certified to it without an intervening proposed decision; or

(c) Direct that the procedure in sub. (2) be followed, except that in a class 1 proceeding both written and oral argument may be limited.

[62] *Sea View,* 223 Wis. 2d at 144–46.

[63] *Sea View Estates Beach Club, Inc. v. DNR,* 223 Wis. 2d 138, 149, 588 N.W.2d 667 (Ct. App. 1998).

[64] *Id.* at 147, 149.

[65] *Id.* at 149.

Similarly, in *Borsellino v. DNR,* 2000 WI App 27, ¶¶ 5–6, 232 Wis. 2d 430, 606 N.W.2d 255, the court of appeals reviewed a Division of Hearings and Appeals decision regarding pier size

¶ 49. Adhering to the distinction between *Roehl Transport* and *Sea View,* the court of appeals has granted no deference to decisions of the Division of Hearings and Appeals on behalf of the Department of Health and Family Services (DHFS). Although permitted by Wis. Stat. § 227.46(3), DHFS has not adopted decisions of the Division of Hearings and Appeals as final.[66]

that was adopted by the Department of Natural Resources under Wis. Admin. Code § NR 2.155(1). Relying on *Sea View,* the court of appeals reviewed the decision as the final decision of the Department of Natural Resources and gave the decision great weight deference.

[66] In *Artac v. DHFS,* 2000 WI App 88, 234 Wis. 2d 480, 610 N.W.2d 115 (a case arising under Wis. Stat. § 227.43(1)(bu), which is parallel to Wis. Stat. § 227.43(1)(b) and (br)), the court of appeals, citing *Roehl Transport* and *Sea View,* gave no deference to a decision of the Division of Hearings and Appeals denying a medical assistance application. The court of appeals pointed out that, unlike the Department of Natural Resources in *Sea View,* the Department of Health and Family Services had not adopted the decision of the Division. Thus the court of appeals granted the Division's decision no deference. The court of appeals commented that "[I]t appears unusual to grant different levels of deference to what are effectively all [Division] decisions based on whether a particular agency has a rule by which it automatically adopts those decisions. However under *Roehl* and *Sea View,* it appears that we are bound to do so." 234 Wis. 2d 480, ¶ 13 n.6.

The court of appeals followed *Artac* in *Buettner v. DHFS,* 2003 WI App 90, 264 Wis. 2d 700, 663 N.W.2d 282. In *Buettner,* the Department of Health and Family Services terminated Buettner's medical assistance benefits. Buettner appealed to the Division of Hearings and Appeals, which, after a hearing, affirmed. As in *Artac,* the Division's authority to hear Buettner's challenge came from Wis. Stat. § 227.43(1)(bu). The circuit court granted summary judgment for the Department. On appeal, the court of appeals determined that the Division of Hearings and Appeals decision had not been adopted by DHFS,

¶ 50. A more recent case, *Town of Barton v. Division of Hearings & Appeals,* 2002 WI App 169, 256 Wis. 2d 628, 649 N.W.2d 293, is similar to the instant case. *Town of Barton,* like the present case, arose under Wis. Stat. § 227.43(1)(bg).[67]

¶ 51. The City of West Bend had requested permission from the Town of Barton to build a sanitary sewer interceptor through the Town. The Town denied the request, and the City appealed to the Division of Hearings and Appeals under Wis. Stat. § 86.16(5).[68] The Division ordered the Town to permit installation of the interceptor.

¶ 52. On appeal, the court of appeals concluded that due weight deference was appropriate to the decision of the Division of Hearings and Appeals permitting the City to install sewer equipment in the Town under

the statutes were complex, and the Division's decision was entitled to no deference under *Sea View* and *Artac.*

[67] *Town of Barton* addressed Wis. Stat. § 86.16(5), which is included in the list of statutes covered by Wis. Stat. § 227.43(1)(bg). *See supra* note 21.

[68] Wisconsin Stat. § 86.16(5) states:

> Any person, firm or corporation whose written application for permission to construct such lines within the limits of a highway has been refused, or has been on file with the department or local authority for 20 days and no action has been taken thereon, may file with the department or local authority a notice of appeal to the division of hearings and appeals. The department or local authority shall thereupon return all of the papers and action of the department or local authority to the division of hearings and appeals, and the division of hearings and appeals shall hear and try and determine the appeal on 10 days' notice to the department or local authority, and the applicant. The order entered by the division of hearings and appeals shall be final.

*See also* Wis. Stat. § 227.43(1)(bg).

Wis. Stat. § 86.16(5),[69] because (1) the Division of Hearings and Appeals "has been charged with administering Wis. Stat. § 86.16(5)" and (2) the Division has "some experience, even though its experience is not of long standing."[70] The court of appeals decision did not explain why it viewed the Division of Hearings and Appeals as charged with administering § 86.16(5) and did not refer to either *Roehl Transport* or *Sea View* or any other case in its discussion of the standard of review.[71]

¶ 53. These court of appeals cases can be explained as follows: When the Division of Hearings and Appeals hears disputes under Wis. Stat. §§ 227.43(1)(b), (br), (bu), and (by), it appears to have jurisdiction concurrent with the Department of Natural Resources, the Department of Transportation, the Department of Health and Family Services, and the Department of Workforce Development, respectively. Furthermore, each department may by rule or in a particular case may by order direct that the hearing examiner's decision be the final decision of the agency.[72] *Roehl Transport* and *Sea View* fall within these statutory provisions. The level of deference depends on whether the department adopts the decision of the Division and whether the department has the requisite expertise in the issue before it. The court of appeals thus gave deference in *Sea View* but not in *Roehl Transport*.

[69] *Town of Barton v. Div. of Hearings & Appeals*, 2002 WI App 169, ¶¶ 10, 15, 256 Wis. 2d 628, 649 N.W.2d 293.

[70] *Id.*, ¶ 10.

[71] The briefs in *Town of Barton* made no reference to *Roehl Transport* or *Sea View*.

[72] Wis. Stat. § 227.46(3)(a).

¶ 54. In contrast, when the Division of Hearings and Appeals hears disputes under Wis. Stat. § 227.43(1)(bg), the statute involved in the present case and in *Town of Barton,* the Division is the only administrative entity with authority to conduct the hearing, and the Division's decision is final subject to judicial review.[73] Furthermore, Wis. Stat. § 227.46(3) does not permit the Department of Transportation to promulgate a rule adopting, as a final decision of the Department, decisions of the Division rendered under § 86.16(5) *(Town of Barton)* or § 218.0116(8)(a) (the instant case).

¶ 55. After reviewing *Roehl Transport, Sea View, Town of Barton,* and other cases such as those involving LIRC and the Tax Appeals Commission, we conclude that the legislature imposed the adjudicative responsibilities under Wis. Stat. § 218.0116(8)(a) on the Division of Hearings and Appeals and thus, for the purposes of adjudication, charged the Division with administration and enforcement of that statute. Therefore, our cases recognize that although statutory interpretation is ordinarily a question of law determined independently by a court, a court may accord deference to the Division's interpretation of § 218.0116(8)(a) under appropriate circumstances set forth in the case law.

¶ 56. Applying these cases, we conclude that in the present case the Division of Hearings and Appeals is not entitled to great weight deference because it has no

[73] Wis. Stat. §§ 227.43(1)(bg), 227.46(2m), (3). *See also* Wis. Stat. § 218.0116(8)(c), (9).

Wisconsin Stat. § 227.46(2m) permits the Department of Transportation to seek judicial review of a Division decision made under § 227.43(1)(bg).

experience or expertise in the issue presented. At most, the Division is entitled to due weight deference. The Division has heard numerous cases under Wis. Stat. § 218.0116 and its predecessor statutes. However, besides the present case, only two of those cases have considered a subsection of § 218.0116 addressing a motor vehicle dealer agreement, and neither of those disputes addressed the definition of "motor vehicle dealer agreement" or § 218.0116(8) or its predecessor statute.[74] Nor did these disputes address the definition of "agreement" or "franchise" under § 218.0101(1) and (13).

¶ 57. The other disputes before the Division of Hearings and Appeals relating to Wis. Stat. § 218.0116 addressed provisions of that section that impose licensing requirements on motor vehicle dealers and manufacturers or regulate the sale of motor vehicles. While the Division may have expertise regarding these issues, we conclude that interpretation of a motor vehicle dealer agreement under § 218.0116(8)(a) is a matter of first impression and that the Division lacks the requisite expertise and experience for its statutory interpretation to be accorded great weight deference.[75]

¶ 58. Even if we were to grant due weight deference to the statutory interpretation of the Division of Hearings and Appeals of § 218.0116(8)(a) in the present case, we do not adopt the Division's statutory interpretation of § 218.0116(8)(a) because, as we explain below, another interpretation is more reasonable.

## II

¶ 59. The substantive dispute in the present case centers on what documents constitute the motor ve-

---

[74] *See Decisions Issued by DHA for Dept. of Transportation, available at* http://dha.state.wi.us (last visited June 27, 2005).

[75] *See UFE Inc.,* 201 Wis. 2d at 284 (citing *Harnischfeger Corp.,* 196 Wis. 2d at 660).

hicle dealer agreement under Wis. Stat. § 218.0116(8). More specifically, the dispute focuses on whether the document assigning territory to Racine H-D (the zip code list) is part of the motor vehicle dealer agreement under § 218.0116(8). We first set forth the facts, then determine the meaning of "motor vehicle dealer agreement" under § 218.0116(8) and apply the statutory interpretation to the present case.

## A

¶ 60. The following are the undisputed facts. The Division of Hearings and Appeals granted summary judgment to Harley- Davidson, concluding as a matter of law on the basis of undisputed facts that the zip code list assigning territory to Racine H-D was not part of the motor vehicle dealer agreement.

¶ 61. Harley-Davidson manufactures and sells motorcycles, parts, and accessories through a nationwide network of retail dealers. Harley-Davidson is licensed as a "manufacturer" under Wis. Stat. § 218.0101(20)(a) and Racine H-D is licensed as a "motor vehicle dealer" under Wis. Stat. § 218.0101(23). Racine H-D became a Harley-Davidson dealer in 1992 and entered into a series of contracts with Harley-Davidson, all granting Racine H-D a non-exclusive right to purchase and sell Harley-Davidson products at retail from an approved location in Racine.

¶ 62. When Racine H-D became a Harley-Davidson dealer in 1992, the parties signed a contract that granted Racine H-D the right to sell Harley-Davidson products in a "territory" defined as "Racine County in the State of Wisconsin." Racine County includes the zip code 53105, which encompasses the City of Burlington, an area of very high sales.

¶ 63. On expiration of the 1992 contract, in late 1993 or early 1994, Harley-Davidson presented Racine H-D with a new contract that made reference to and expressly incorporated Harley-Davidson's General Conditions of Sales and Service. Instead of assigning a territory, these documents stated that Harley-Davidson would assign Racine H-D a territory from "time to time" that could be modified based on Harley-Davidson's "good faith business judgment."

¶ 64. Before signing the 1994 contract, Racine H-D learned that Harley-Davidson intended to remove the Burlington zip code from Racine H-D's assigned territory and that the Burlington zip code would be reassigned to Uke's Harley-Davidson, a dealer located in Kenosha.

¶ 65. In response to Harley-Davidson's removal of the Burlington zip code, Racine H-D filed a complaint under Wis. Stat. § 218.0116(8) with the Division of Hearings and Appeals and the Department of Transportation, contesting the removal of the Burlington zip code. Racine H-D asserted that under the new method of assigning territory, which based assignment on a dealer's distance from the center of a zip code, Racine H-D was closer to Burlington than was Uke's Harley-Davidson.

¶ 66. Harley-Davidson then reevaluated its calculations and transferred the Burlington zip code back to Racine H-D. Racine H-D then withdrew its complaint and signed the 1994 dealer contract, dated May 25, 1994 and set to expire in 1998.

¶ 67. Racine H-D first received a list of zip codes to be included in its territory in 1994 in a meeting with its district manager. The list was on a sheet of paper, separate from any other documents.

¶ 68. In 1998, Harley-Davidson and Racine H-D entered into the contract at issue in the present case. Like the contract entered into by the parties in 1994, the 1998 contract includes both a signed document entitled "Harley-Davidson Motor Company Motorcycle Dealer Contract" and a second document entitled "General Conditions of Sales and Service," which the Dealer Contract expressly incorporates. Neither document includes the zip code list but the word "territory" is used in both documents.

¶ 69. The Dealer Contract mentions the assignment of territory in relevant parts as follows:

1. GRANT OF RIGHTS. Seller hereby grants to Dealer, and Dealer hereby accepts from Seller, the following rights:

A. To purchase and resell at retail, primarily to persons residing or doing business in the Territory assigned under this Contract the motorcycles, parts, accessories, clothing, and other items (collectively referred to in this Contract as the "Harley-Davidson Products") identified in the Products Addendum to the Harley-Davidson Motor Company Motorcycle Dealer Contract (referred to in this Contract as the "Products Addendum");

. . . .

Each of the foregoing rights granted to Dealer shall be non-exclusive.

. . . .

6. SPECIAL MARKET RIGHTS. . . . Dealer's special market rights only limit the location at which an additional Harley-Davidson motorcycle dealership may be established and are not in any way related to, and have no impact upon, Dealer's Territory, which remains

non-exclusive and subject to change by Harley-Davidson from time-to-time.

¶ 70. The document entitled "General Conditions of Sales and Service," expressly incorporated in the Dealer Contract,[76] provides that Harley-Davidson can modify, alter, or adjust the territory at any time based on its good faith business judgment and that territory changes may result from the relocation of an existing dealership. The document provides, in relevant part, for the assignment of territory as follows:

> Seller will assign Dealer a geographic area from time to time as Dealer's Territory, in which Dealer is responsible for effectively selling at retail, servicing and otherwise representing Harley-Davidson Products. It is understood and agreed that (a) Seller may modify, alter or adjust Dealer's Territory at any time, based on Seller's good faith business judgment; and (b) Dealer's Territory is non-exclusive. Without limitation, Dealer recognizes that Seller may change its Territory if the change results from the establishment of an additional Harley-Davidson dealership or the relocation of an existing dealership.

¶ 71. The General Conditions of Sales and Service document expressly provides that Racine H-D has

---

[76] Regarding the General Conditions of Sales and Service, the Dealer Contract provides:

2. General Conditions. The Harley-Davidson Motor Company General Conditions of Sales and Service (January 1999) (referred to in this Contract as the "General Conditions"), a copy of which has been provided to Dealer and has been read and agreed to by Seller and Dealer, and such General Conditions and any duly executed and delivered supplement or amendment thereto are hereby expressly made a part of this Contract and incorporated herein. Unless the context otherwise requires, any term defined in any part of this Contract shall have the same meaning in all parts of this Contract. (Emphasis added.)

591

rights and obligations related to a "Territory assigned under this Contract . . . ." The document also requires Racine H-D to "devote its best efforts to promote aggressively the sale at retail of Harley-Davidson products to customers within the Territory assigned to Dealer . . . ." In addition, the document requires Racine H-D to "develop, utilize and participate in various advertising and sales promotional programs . . . in fulfilling its responsibilities for selling, promoting and advertising Harley-Davidson products in the Territory" and obligates Racine H-D to maintain an inventory based on the "proper share of current and anticipated demand for Harley-Davidson Motorcycles in the Territory."

¶ 72. The parties agree that both the 1998 Dealer Contract and the General Conditions of Sales and Service are included in the agreement under Wis. Stat. § 218.0116(8)(a). Neither document spells out the territory assigned to Racine H-D, although both documents refer to Harley-Davidson assigning territory to Racine H-D. The dispute centers on whether other documents relating to the assignment of territory, in particular the zip code lists Harley-Davidson provided to Racine H-D, are part of the 1998 agreement.

¶ 73. As demonstrated by various documents and the parties' course of dealings, Racine H-D's territory continued to include the Burlington zip code from 1994 through 2001. For example, almost every year the parties sent direct mail promotional items to residents of Racine H-D's territory, which was described as including the Burlington zip code.

¶ 74. The dispute between the parties arose when Harley-Davidson decided in 2001 to remove the Burlington zip code from Racine H-D's assigned territory. In 2001, Harley-Davidson informed Racine H-D that the

Burlington zip code would be reassigned to Uke's Harley-Davidson once Uke's moved its Kenosha facility to a new location along Interstate 94. Using its standard distance calculations, Harley-Davidson determined that the new Uke's location was closer to the center of the Burlington zip code than was Racine H-D's location.

¶ 75. In 2002, in response to the reassignment of the Burlington zip code, Racine H-D filed a complaint with the Division of Hearings and Appeals and the Department of Transportation.[77] Racine H-D argued before the Division that the removal of the Burlington zip code constitutes a modification of the motor vehicle dealer agreement between the parties. Harley-Davidson moved for summary judgment, and the hearing examiner granted the motion.

¶ 76. The decision of the hearing examiner was for the most part approved by the administrator of the Division of Hearings and Appeals. The final ruling stated that "[t]he assignment of a territory by Harley-

[77] *See* Wis. Stat. § 218.0116(8)(a):

A manufacturer or distributor may not modify a motor vehicle dealer agreement during the term of the agreement or upon its renewal if the modification substantially and adversely affects the motor vehicle dealer's rights, obligations, investment or return on investment without giving 60 days written notice of the proposed modification to the motor vehicle dealer unless the modification is required by law, court order or the licensor. Within the 60–day notice period the motor vehicle dealer may file with the department of transportation and the division of hearings and appeals and serve upon the respondent a complaint for a determination of whether there is good cause for permitting the proposed modification. The division of hearings and appeals shall promptly schedule a hearing and decide the matter. Multiple complaints pertaining to the same proposed modification shall be consolidated for hearing. The proposed modification may not take effect pending the determination of the matter.

Davidson for [Racine H-D] is not part of the motor vehicle dealer agreement" between the parties and that "the 'Harley-Davidson Motor Company Motorcycle Dealer Contract' and the 'Harley-Davidson Motor Company General Conditions of Sales and Service' together comprise the 'motor vehicle dealer agreement.' " The Division of Hearings and Appeals further ruled that "[a]lthough the assignment of a territory to a motor vehicle dealer is an important component of the agreement between a manufacturer and a dealer, the description of the specific territory assigned is not a necessary component." Finally, the Division concluded that Harley-Davidson's policy of not including specific zip codes in motor vehicle dealer agreements is sensible because the legislature did not intend that each modification of a dealer's assigned territory, when made under a uniform policy, should become the potential subject of a complaint.

¶ 77. On review the circuit court concluded that the zip codes list provided to Racine H-D in 1994 was part of the motor vehicle dealer agreement because the motor vehicle dealer agreement "only makes sense if there is reference" to the zip code list. The court of appeals reversed the order of the circuit court. The court of appeals applied great weight deference to the decision of the Division of Hearings and Appeals, concluding that the legislature had charged the Division with administration of § 218.0116(8) and that the Division had substantial experience interpreting the motor vehicle code.[78] The court of appeals thus reinstated the Division's decision and summary judgment order, holding that it was a reasonable interpretation of the

[78] *Racine Harley-Davidson*, 278 Wis. 2d 508, ¶¶ 22, 24.

meaning of the phrase "motor vehicle dealer agreement" under Wis. Stat. § 218.0116(8).[79]

## B

¶ 78. We turn now to the question whether the assignment of territory is part of a motor vehicle agreement under Wis. Stat. § 218.0116(8). We conclude that a manufacturer's assignment of territory is an essential aspect of the franchise relationship and therefore part of a motor vehicle dealer agreement under § 218.0116(8).

¶ 79. We begin our analysis of the meaning of "motor vehicle dealer agreement" as used in § 218.0116(8) by examining §§ 218.0101(1) and (13), which define the words "agreement" and "franchise" respectively for the purposes of §§ 218.0101 to 218.0163 governing motor vehicle dealers.

¶ 80. Wisconsin Stat. § 218.0101(1) defines "agreement" to mean "a contract that describes the franchise relationship between manufacturers, distributors, importers and dealers." The statute does not define "agreement" as a written instrument and does not require that all terms of the agreement be included in a single instrument designated as the agreement and executed by both parties.

¶ 81. Section 218.0101(13) defines "franchise" to mean "the right to buy, sell, distribute or service a line make of motor vehicles that is granted to a motor vehicle dealer or distributor by a manufacturer, importer or distributor." Nothing in Wis. Stat. §§ 218.0101 to 218.0163 further defines the words "agreement,"

---

[79] *Id.*, ¶¶ 26–30.

"contract" (as used in § 218.0101(1)) or "franchise" for purposes of § 218.0116(8). The statutory definition of agreement is broad, encompassing the parties' description of their franchise relationship.[80]

¶ 82. Several other provisions in Wis. Stat. §§ 218.0101 to 218.0163 demonstrate that the assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 83. The first sentence of Wis. Stat. § 218.0114(11) provides that "[a] manufacturer . . . shall designate in writing the area of sales responsibility assigned to a motor vehicle dealer." Thus a manufacturer's written assignment of territory is a statutory condition for licensing.

¶ 84. While this language does not explicitly require that the written territory assignment be part of the motor vehicle dealer agreement, the implication is that the assignment of territory is an essential aspect of

---

[80] The original definition of "agreement" adopted in 1961 is substantially the same as the present definition. The original definition stated, " 'Agreement' means contract or franchise or any other terminology used to describe the contractual relationship between manufacturers, distributors, importers and dealers." Wis. Stat. § 218.01(1)(u) (1961).

A worksheet for a draft of the 1961 session law, ch. 560, Laws of 1961, states that " '[a]greement' is intended to include and be synonymous with contract or franchise, or any other terminology used to describe the contractual relationship between manufacturers, distributors, importers and their appointed dealers."

The legislative history of the definition of "agreement" adopted in 1993 demonstrates no intent to change the substance of the prior definition.

the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 85. The second sentence of Wis. Stat. § 218.0114(11) prohibits a manufacturer from modifying the area of sales responsibility to avoid the requirements of § 218.0116(7), which governs a manufacturer who seeks to enter into a franchise agreement establishing or relocating a motor vehicle dealership. If a manufacturer seeks to establish or relocate a dealership, an existing dealer franchise may file a protest with the Department of Transportation and the Division of Hearings and Appeals. Thus territory plays a role when a manufacturer proposes establishing another dealership within the "relevant market area" of an existing dealership. The implication in § 218.0116(7) and (11) is that the manufacturer's assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 86. Section 218.0116(1)(r) (part of Wis. Stat. § 218.0116(1) governing the denial, suspension or revocation of licenses) provides that a manufacturer's license may be denied, suspended, or revoked if, among other matters, the manufacturer "fails to designate in writing the area of sales responsibility assigned to a motor vehicle dealer." Although subsection (1)(r) does not explicitly require that the assignment of territory be part of the motor vehicle agreement, it reaffirms the notion that the assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement between the parties.

¶ 87. Another significant provision for our purposes is Wis. Stat. § 218.0114(9)(a)1. prohibiting and rendering void any provisions in an agreement that "waive a remedy or defense available to . . . a dealer or

other provision protecting the interests of . . . a dealer under ss. 218.0101 to 218.0163 . . . ." If we were to hold that a manufacturer may exclude an assignment of territory from a motor vehicle dealer agreement and reserve for itself the power to change the territory according to its good faith business judgment, we would in effect be allowing a manufacturer to enter into a motor vehicle dealer agreement forcing the dealer to waive the remedy and protections available to it under Wis. Stat. § 218.0116(8).

¶ 88. Unless an assignment of territory is treated as part of the motor vehicle dealer agreement, Wis. Stat. § 218.0116(8) will not provide an effective administrative remedy to motor vehicle dealers for a manufacturer's modification of territory. This result seems contrary to the purposes of Wis. Stat. §§ 218.0114(9)(a)1. and 218.0116(8).

¶ 89. Thus Wis. Stat. § 218.0101(1) and (13); § 218.0114(9) and (11); and § 218.0116(1)(r), (7), and (8) support the view that an assignment of territory is an essential aspect of the franchise relationship and therefore part of a motor vehicle dealer agreement. Failing to include an assignment of territory as a part of the motor vehicle dealer agreement not only would make it difficult to "effectively work under the terms of the contract[,]" as the circuit court stated, but also would permit manufacturers and dealers to circumvent by contract essential and non-waivable provisions of §§ 218.0101 to 218.0163.

¶ 90. The Division of Hearings and Appeals concluded that the assignment of territory is an important component of the franchise relationship between a manufacturer and dealer but that "the precise description of the assigned territory is not essential to the relationship." It concluded that the express language in

Wis. Stat. § 218.0114(11) prohibiting a manufacturer from modifying "the area of sales responsibility to avoid the requirements of s. 218.0116(7)... implies that manufacturers may modify a dealer's area of sales responsibility in other instances."

¶ 91. The reasoning of the Division of Hearings and Appeals is not persuasive and gives no consideration to Wis. Stat. § 218.0114(9)(a)1. prohibiting and rendering void any provisions in an agreement that "waive a remedy or defense available to ... a dealer or other provision protecting the interests of ... a dealer under ss. 218.0101 to 218.0163." The Division's interpretation of § 218.0116(8) is not the more reasonable interpretation because it allows a manufacturer to circumvent the protections afforded a dealer under Wis. Stat. § 218.0116(8) by allowing the manufacturer to place the assignment of territory in a document separate from other documents.

■■

¶ 92. Furthermore, the statutory interpretation of the Division of Hearings and Appeals fails to serve the remedial purpose underlying the statute. The dealership law is designed to protect motor vehicle dealers from unfair treatment by manufacturers who are in a stronger bargaining position than dealers and to give dealers remedies against the manufacturer. In *Forest Home Dodge, Inc. v. Karns,* 29 Wis. 2d 78, 138 N.W. 2d 214 (1965), we explained that the legislature recognized this disparity of bargaining positions in adopting the motor vehicle dealership law:

> Implicit in this law is the recognition of the gross disparity of bargaining power between the manufacturer of automobiles and the local retailer. It was enacted in recognition of the long history of the abuse of dealers by manufacturers. . . . The purpose of the law

is to furnish the dealer with some protection against unfair treatment by the manufacturer.[81]

¶ 93. The court has often stated that remedial legislation should be broadly construed to effectuate its purpose.[82] We thus construe the relevant sections of ch. 218 broadly to effectuate the statute's remedial purpose. In so doing, we conclude that a more reasonable interpretation of these remedial statutes than that of the Division of Hearings and Appeals is that a manufacturer's assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 94. We conclude that read together, Wis. Stat. § 218.0101(1) and (13); § 218.0114(9) and (11); and § 218.0116(1)(r), (7), and (8); and the purpose of §§ 218.0101 to 218.0163, support the conclusion that a more reasonable interpretation of the statutes than

---

[81] *Forest Home Dodge, Inc. v. Karns,* 29 Wis. 2d 78, 85, 138 N.W. 2d 214 (1965); *see also Kuhl Motor Co. v. Ford Motor Co.,* 270 Wis. 488, 494, 71 N.W.2d 420 (1955) ("[T]he legislature recognized the inequality in bargaining power between an automobile dealer and an economically powerful manufacturer such as the defendant and that it desired to furnish him some protection by deterring unfair cancellation.").

[82] *See, e.g., Garcia v. Mazda Motors of America, Inc.,* 2004 WI 93, ¶ 8, 273 Wis. 2d 612, 682 N.W.2d 365 ("[W]e will liberally construe remedial statutes to suppress the mischief and advance the remedy that the legislature intended to afford."); *City of Madison v. Hyland, Hall, & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976) (quoting *Stone v. Inter-State Exchange,* 200 Wis. 585, 589, 229 N.W. 26 (1930) ("Under the accepted law of Wisconsin and of other jurisdictions, remedial statutes should be liberally construed 'to suppress the mischief and advance the remedy which (the statute) intended to afford.' ")).

that of the Division of Hearings and Appeals is that a manufacturer's assignment of territory is an essential aspect of the franchise relationship and therefore part of the motor vehicle dealer agreement.

¶ 95. Applying our interpretation of the statutes to the present case, we agree with the circuit court that the zip code list is part of the motor vehicle dealer agreement under Wis. Stat. § 218.0116(8) between the parties. The circuit court astutely observed: "It is disingenuous to argue the [zip code] list is not part of the dealership agreement. . . . Neither [Racine H-D nor Harley-Davidson] can effectively work under the terms of the contract without reference to the territorial restrictions as set forth in the list."

¶ 96. Accordingly, we reverse the decision of the court of appeals and hold (1) that Harley-Davidson's assignment of territory to Racine H-D was part of the motor vehicle dealer agreement between Harley-Davidson and Racine H-D under Wis. Stat. § 218.0116(8); and (2) that the cause should be remanded to the circuit court for remand to the Division of Hearings and Appeals to reinstate Racine H-D's complaint and to conduct further proceedings under Wis. Stat. § 218.0116(8) consistent with this opinion.

¶ 97. *By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for remand to the Division of Hearings and Appeals.

¶ 98. DAVID T. PROSSER, J. (*concurring*). The majority opinion provides a valuable analysis of our standard of review for various administrative decisions. It includes a discussion of when we afford great weight deference to an agency's interpretation of law. I join the opinion and write separately only to reference my

concurring opinion in *Hilton v. DNR*, 2006 WI 84, ___ Wis. 2d ___, 717 N.W.2d 166, which was written with the hope of generating discussion.

¶ 99. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). The majority opinion concludes that the sales territory serviced by Racine Harley-Davidson, Inc. (Racine H-D) is part of its "motor vehicle dealer agreement" under Wis. Stat. § 218.0166(8)(a) (2003–04).[1] Majority op., ¶ 78. I agree with this conclusion. I also applaud the majority opinion's thorough discussion of the common law standards of deference to agency decisions that have been applied in the past. However, the majority opinion also concludes that the Department of Hearings & Appeals' (DHA) interpretation of § 218.0166(8)(a), a question of law, may be accorded the same levels of deference that we have accorded the decisions of a line agency that is charged with administering a specific statutory scheme. Majority op., ¶¶ 55–58. I write separately for two reasons: (1) I disagree with the majority opinion's conclusion that common law levels of deference may be accorded to decisions of the DHA administrator when the administrator's decision has not been adopted by the line agency, and (2) the majority opinion overlooks contract interpretation that is central to deciding the issue presented for review.

## I. BACKGROUND

¶ 100. Racine H-D has been a franchised Harley-Davidson Motor Company (Harley-Davidson) dealer since 1992. As part of its relationship with Harley-Davidson, Racine H-D has agreed to service specific geographic areas that are referred to as Racine H-D's

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

"Territory." Initially, Racine H-D's Territory was all of Racine County, which included the Burlington zip code, 53105. Subsequently, its Territory was described by a list of zip codes.

¶ 101. However, in 2001 when Harley-Davidson provided a new franchise agreement, the Burlington zip code was not included in Racine H-D's Territory. Racine H-D claimed that removing Burlington from its Territory was a modification of its franchise agreement that substantially and adversely affected its rights as a Harley-Davidson motor vehicle dealer and that the modification was made without good cause. It filed a complaint with DOT, alleging a violation of Wis. Stat. § 218.0116(8).[2]

¶ 102. The complaint was referred to the DHA to adjudicate, as authorized by statute, Wis. Stat. § 218.0116(8)(a), and a DHA hearing examiner was assigned to adjudicate it, Wis. Stat. § 227.43(1)(bg). The DHA hearing examiners are assigned to hear contested case proceedings from many different line agencies.[3] The legislature has required the DHA administrator to establish a system for their assignments that "shall

---

[2] Wisconsin Stat. § 218.0116(8) provides in relevant part:

 (a) A manufacturer or distributor may not modify a motor vehicle dealer agreement during the term of the agreement or upon its renewal if the modification substantially and adversely affects the motor vehicle dealer's rights, obligations, investment or return on investment without giving 60 days written notice of the proposed modification to the motor vehicle dealer unless the modification is required by law, court order or the licensor.

[3] The DHA conducts hearings for the Department of Corrections, the Department of Health & Family Services, the Department of Workforce Development, the Department of Administration, the Department of Natural Resources, the Department of Justice, the Department of Transportation, the Department of Public Instruction, and the Department of

ensure, to the extent practicable, that hearing examiners are assigned to different subjects on a rotating basis." Section 227.43(1g).[4]

¶ 103. Harley-Davidson moved for summary judgment to dismiss the complaint. It contended that Racine H-D's Territory was not a part of its "motor vehicle dealer agreement," as those terms are used in Wis. Stat. § 218.0116(8); and therefore, assigning the Burlington zip code to another dealer did not contravene § 218.0116(8). The hearing examiner agreed with Harley-Davidson because the description of Racine H-D's Territory was not contained within the Harley-Davidson Motor Company Motorcycle Dealer Contract (Dealer Contract) or the Harley-Davidson Motor Company General Conditions of Sales and Service (Conditions of Sales and Service) that the parties signed. The DHA administrator affirmed the decision of the hearing examiner. It is the decision of the DHA administrator, granting summary judgment dismissing Racine H-D's complaint, that is before us for review.

## II. DISCUSSION

A. Standards of Review

1. Statutes

¶ 104. Statutory construction is a question of law. *Buettner v. DHFS,* 2003 WI App 90, ¶ 6, 264 Wis. 2d

Employee Trust Funds. The DHA website, http://dha.state.wi.us/home (last visited June 14, 2006).

[4] Even though the administrator may establish "pools of examiners responsible for certain subjects," Wis. Stat. § 227.43(1g), the record contains nothing in regard to the qualifications or experience of the hearing examiner who heard this case.

700, 663 N.W.2d 282. We have applied three levels of common law deference to an administrative agency's interpretation of a statute: (1) no deference, often referred to as de novo review; (2) due weight deference, where we affirm an agency's interpretation if it is reasonable and we conclude that another interpretation is not more reasonable; and (3) great weight deference, where we affirm an agency's interpretation if it is reasonable, even when we conclude that another interpretation is more reasonable. *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 285–87, 548 N.W.2d 57 (1996).

¶ 105. Due weight deference requires that the legislature has charged the agency with the administration of the statute in question and that the agency has had at least some experience interpreting the statute in a consistent fashion. *Id.* at 286–87. In according due weight deference, we defer to an agency's statutory interpretation only when we conclude that another interpretation of the statute is not more reasonable than that chosen by the agency. *Id.* at 287. In order to decide that question, we make a comparison between the agency's interpretation and alternate interpretations. This comparison requires us to construe the statute ourselves. In so doing, we employ judicial expertise in statutory construction, and we embrace a major responsibility of the judicial branch of government, deciding what statutes mean. Therefore, this level of deference is of a lesser concern than is great weight deference.

¶ 106. Great weight deference also requires that the legislature has charged the agency with the administration of the statute in question. *Id.* at 284. Additionally, in order to accord great weight deference, the agency must have long standing expertise in administering the statute; it must have used its expertise and specialized knowledge in forming its interpretation of the statute; and the agency's interpretation must pro-

vide more uniformity and consistency in the application of the statute than would a court's decision. *Id.* (citing *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)).

¶ 107. Our basis for giving even due weight deference to an agency's statutory interpretation is bottomed on two required assumptions: the statute is one that the agency was charged with administering and the agency has at least some expertise in the interpretation of the statute in question. *UFE,* 201 Wis. 2d at 284–86.

¶ 108. The majority opinion concludes the first assumption, that the DHA was charged with administering Wis. Stat. § 218.0116(8), applies. Majority op., ¶ 55. It also concludes that the DHA is charged with enforcing § 218.0116(8). *Id.* I conclude that neither conclusion pertains here. First, the type of legislatively assigned responsibility of a deciding authority for a line agency to which we previously have accorded deference, e.g., LIRC, has been limited to the discrete statutory context that the line agency, itself, administered. *See, e.g., West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11–13, 357 N.W.2d 534 (1984) (concluding that the agency (WERC) can provide uniformity and consistency in *the field of its specialized knowledge); Jicha v. DILHR,* 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992) (concluding that deference to an agency's statutory interpretation is appropriate only where the interpretation is based on the *specialized knowledge, technical competence and experience particular to the agency* (LIRC)).

¶ 109. Second, in cases brought to the DHA for a hearing, the DHA administrator makes the final agency decision that is then subject to judicial review under Wis. Stat. § 227.52. Wis. Stat. § 227.46(2m). However, the DHA administrator does not have the type of specialized knowledge and technical competence of other deciding

authorities, such as LIRC and WERC, to which we have accorded deference in the past. This is so because the DHA administrator is the final decision maker for many types of DHA adjudications, e.g.: (1) the Department of Corrections (DOC) parole and probation revocations, Wis. Admin. Code § HA 2.05(8); (2) the DOC good time forfeitures, Wis. Admin. Code § HA 2.06(8); (3) all decisions of the DOT for which a hearing examiner is appointed under Wis. Stat. § 227.43(1)(bg);[5] (4) decisions by the Department of Commerce in regard to permitting, suspending or revoking a permit for a manufactured home park, § 227.43(1)(bg); (5) decisions by the Department of Commerce in regard to licensing or suspending and revoking a license to be a manufactured home dealer, § 227.43(1)(bg); and (6) decisions by highway commissioners of municipalities to close a highway for safe transportation of certain hazardous materials, § 227.43(1)(bg). And finally, the DOT cannot by rule or by order in an individual case adopt the DHA administrator's decision. Section 227.46(3). Therefore, there is not even the assurance that the administrator's decision comports with the line agency's interpretation of the law.

[5] The decisions of the DOT involve regulation of outdoor advertising, regulation of junkyards, permits to construct entrances to state highways, placement of utility lines along highways, removal of highway signage, rescinding designations of marked highway routes within a municipality, certificates of approval to construct airports, regulations of structures that could affect airport operation, annual registration fees for aircraft, closing of highways for the safe transportation of hazardous materials, granting or suspending or revoking motor vehicle dealer or manufacturer or importer licenses, allegations of misuse of temporary operation permits and plates, the DOT acts or omissions under ch. 342, licenses for driver instructors and permits for oversized vehicles and loads.

¶ 110. Under current statutory provisions, the administrator of the DHA has become a general adjudicator of broadly ranging disputes arising under numerous statutes and administrative rules. This is the natural result of the 1977 creation of Wis. Stat. § 227.43, which began the process of bringing to the DHA the adjudication of claims arising under statutes administered by many different line agencies. This separated the "administrative and prosecutorial functions of the department[s] from [their] adjudicative functions," and established the potential for general adjudicative authority in the DHA. *See DOT v. Office of the Comm'r of Transp.*, 159 Wis. 2d 271, 277–78, 463 N.W.2d 870 (Ct. App. 1990); *see also* 1995 Wis. Act 370, § 14 (transferring to the Department of Administration, personnel and financial resources formerly used by agencies to adjudicate disputes relating to agencies' interpretation and administration of sections of the statutes assigned to them).

¶ 111. In my view, these legislative changes have shifted the factual underpinnings that we employed in our decisions to accord deference to an agency's statutory interpretation.[6] This shift causes the DHA administrator to function more like a court system that hears disputes on widely divergent topics, than like a final adjudicator for a line agency, which has more special-

---

[6] The majority opinion relies in part on *Town of Barton v. Div. of Hearings & Appeals,* 2002 WI App 169, 256 Wis. 2d 628, 649 N.W.2d 293, for concluding that the legislature assigned the DHA the responsibility for enforcing Wis. Stat. § 218.0116(8). Majority op., ¶¶ 50–55. The author of this concurrence was also the author of *Town of Barton;* however, the question of whether common law deference should be accorded to the DHA was not presented to the court of appeals as it has been presented to the supreme court. Rather, the question in *Town of Barton* was whether Wis. Stat. § 86.16(1) applied to waste water pipelines

ized adjudicative authority. We do not apply common law levels of deference to a court's interpretation of Wisconsin statutes. Therefore, in my view, decisions of the DHA administrator, who is by contract performing general adjudicative functions and has no special expertise in the areas of law decided by multitudes of line agencies for which the DHA administrator has become the "deciding authority," should be treated similarly to decisions of circuit courts. That is, no deference should be accorded the DHA administrator's decision.

¶ 112. The majority opinion also concludes that the common law levels of deference "are in accord with Wis. Stat. § 227.57(10)," majority op., ¶ 13, and that this shows the "legislature has thus entrusted responsibility to the agencies." *Id.* I disagree with both assertions. As an initial matter, there is no indication in § 227.57[7] that great weight deference[8] should ever be accorded. In addition, we have never interpreted § 227.57(10) as being consistent, or inconsistent, with the common law standards of deference.

---

as well as to fresh water pipelines because if it did not, then § 86.16(5) did not permit the DHA to decide the controversy. *Town of Barton,* 256 Wis. 2d 628, ¶¶ 11, 15. The parties did not dispute whether the DHA was charged with administering § 86.16(5) when § 86.16(1) did apply.

[7] Wisconsin Stat. § 227.57(10) states in relevant part:

> Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it.

I do not contrast or compare the common law doctrine of due weight deference with the phrase "due weight" in § 227.57(10) because that issue has not been briefed for the court.

[8] When we apply great weight deference, we affirm an agency's interpretation of a statute even though we conclude that another interpretation is more reasonable. *UFE,* 201 Wis. 2d at 287.

¶ 113. I also am concerned that by setting up a system of hearing examiners, often referred to as administrative law judges,[9] to whom the DHA administrator and the courts may defer, the legislature may have inadvertently established a system of judges who are not accountable to the voters and whose decisions, if great weight deference is accorded, will never receive a meaningful review. This arrangement may thereby deny access to justice that the judicial branch of our tripartite system of government was meant to provide. Accordingly, I conclude that decisions of the DHA administrator should be accorded no deference.[10]

2. Contracts

¶ 114. This case also presents a question of contract interpretation. Therefore, I address the standard of review to be accorded an agency decision that turns on contract construction. Construction of a contract is a question of law to which we give no deference to the decision of an administrative agency. *See Wisconsin End-User Gas Ass'n v. PSC,* 218 Wis. 2d 558, 565, 581 N.W.2d 556 (Ct. App. 1998) (concluding that the courts are more experienced in contract construction than are administrative agencies).

B. Interpretation of Wis. Stat. § 218.0116(8)

¶ 115. The DHA administrator affirmed the decision of the DHA hearing examiner who interpreted the terms "motor vehicle dealer agreement" in Wis. Stat. § 218.0116(8)(a) as not including Racine H-D's Territory.

---

[9] *See* majority op., ¶ 23 n.21.

[10] *See* Patience Drake Roggensack, *Elected to Decide: Is the Decision-Avoidance Doctrine of Great Weight Deference Appropriate in this Court of Last Resort?,* 89 Marq. L. Rev. 541 (Spring 2006).

The validity of this determination is affected by whether the description of Racine H-D's Territory was an "agreement" between Harley-Davidson and Racine H-D, as agreement is defined in Wis. Stat. § 218.0101(1). Section 218.0101(1) provides that an "agreement" is "a contract that describes the franchise relationship between manufacturers, distributors, importers and dealers." Therefore, the agreement of § 218.0116(8) is a contract that covers a particular relationship.

¶ 116. "Contract" is not defined in ch. 218; however, "contract" is a legal term of art to which courts apply an accepted meaning. *Wis. Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612; *see also* Wis. Stat. § 990.01 (explaining that legal terms of art are to be given their accepted legal meanings). A "contract" has been defined generally as an agreed set of "obligations that are enforceable or otherwise recognizable at law." *Black's Law Dictionary* 341 (8th ed. 2004).

¶ 117. The terms that make up a contract can be ascertained by employing well-settled legal principles of contract construction. Therefore, I would give no common law deference to the DHA administrator's statutory interpretation, as an initial matter because I conclude it is not the type of decision to which common law deference has been accorded, as I explained above, and also because, simply stated, the question to be answered is: What are the terms of the parties' contract? Neither the DHA hearing examiner nor the DHA administrator is more skilled than is a court in deciding this question. *End-User Gas Ass'n,* 218 Wis. 2d at 565.

C. Contract Interpretation

¶ 118. Racine H-D's Territory is described in a document separate from the Dealer Contract and the

Conditions of Sales and Service. Therefore, common law principles of contract construction require that in order to ascertain whether this separate writing is part of Racine H-D's contract with Harley-Davidson, we must determine whether the parties intended it to be part of their contract. *Gen. Cas. Co. of Wis. v. Hills,* 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997). When we attempt to ascertain the terms of a contract, we begin with all writings of the parties that relate to the subject matter because all the components of a contract are not required to be set forth in one document. *Appleton Papers, Inc. v. Home Indemnity Co.,* 2000 WI App 104, ¶ 34, 235 Wis. 2d 39, 612 N.W.2d 760. All contemporaneous writings that relate to the same contractual relationship are construed together. *Wipfli v. Bever,* 37 Wis. 2d 324, 326–27, 155 N.W.2d 71 (1967).

¶ 119. The zip code description of Racine H-D's Territory is a writing contemporaneous to the two signed writings, the Dealer Contract and the Conditions of Sales and Service. However, the Conditions of Sales and Service has an integration clause[11] that provides: "Except as explicitly agreed in this Contract, [Harley-Davidson] has made no promises to [Racine H-D] and there are no other agreements or understandings, either written or oral, between the parties affecting this Contract . . . ."[12] Harley-Davidson contends this integration clause prevents the written description of Racine H-D's Territory from becoming part of the contract between the parties. I disagree because, even though it is generally true that contracts that are fully integrated cannot be supplemented with additional terms, *see* Restatement (Second) of Contracts § 216(1)

---

[11] The Dealer Contract makes no attempt at integration.

[12] Conditions of Sales and Service at 20.

(1981), a contract is not completely integrated if it omits an agreed upon term that is necessary to carrying out the intent of the parties. *Thomsen v. Olson,* 219 Wis. 145, 151, 262 N.W. 601 (1935) (concluding that the agreement to buy stock with corporate funds and distribute the shares to achieve equality of ownership for the two remaining shareholders also included the unstated terms that neither shareholder could use company funds to purchase stock that he would refuse to divide with the other shareholder).

¶ 120. Here, the parties' rights and obligations under the Dealer Contract and the Conditions of Sales and Service, to which both parties agree they are bound, cannot be fully ascertained without reference to Racine H-D's Territory. For example, Racine H-D is granted the right to "purchase and resell at retail, primarily to persons residing or doing business in the Territory assigned."[13] Racine H-D had the authority to operate a retail store only within its Territory and only at the specific location approved by Harley-Davidson.[14] The dealer's Territory is also the geographic area where Racine H-D was required to "effectively" sell, service and represent Harley-Davidson products.[15] Racine H-D was required to actively solicit sales of Harley-Davidson merchandise "to customers within the Territory"[16] and to maintain an inventory of motorcycles, parts, accessories and clothing sufficient to meet the anticipated demand "in the Territory."[17] Racine H-D was obligated to advertise in newspapers, Yellow Pages, and other

---

[13] Dealer Contract at 1.

[14] *Id.* at 3.

[15] Conditions of Sales and Service at 2.

[16] *Id.*

[17] *Id.* at 2–3.

places appropriate to "the Territory."[18] One of the ways that Harley-Davidson could evaluate Racine H-D's performance was to review Racine H-D's activities in its Territory. For example, Harley-Davidson could determine whether Racine H-D was advertising Harley-Davidson products in the Burlington zip code, as it contracted to do, by reviewing all advertisements Racine H-D placed. Accordingly, I conclude that the contract between Racine H-D and Harley-Davidson included the written description of Racine H-D's Territory because it is a component necessary to completely describing the rights and obligations of the parties.

¶ 121. In conclusion, even though I agree with the mandate of the majority opinion, because I disagree with its conclusion that common law standards of deference may be accorded to decisions of the DHA administrator when the administrator's decision has not been adopted by the line agency and that contract interpretation is central to the issue presented for review, I respectfully concur.

¶ 122. I am authorized to state that Justices JON P. WILCOX and LOUIS B. BUTLER, JR. join this concurrence.

---

[18] *Id.* at 9.