DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RECOVERY RACING, LLC,** d/b/a **MASERATI OF FT. LAUDERDALE**
and **NEW COUNTRY MOTOR CARS OF PALM BEACH, LLC,** d/b/a
**MASERATI OF PALM BEACH,**
Appellants,

v.

**MASERATI NORTH AMERICA, INC.,**
Appellee.

Nos. 4D18-1020
and 4D18-1021

[January 9, 2019]

Consolidated appeals and cross-appeal from the State of Florida, Department of Highway Safety and Motor Vehicles, HSMV MS-17-2366, DOAH 17-1768, and HSMV MS-17-2367, DOAH 17-1770.

Russell P. McRory and Charles A. Gallaer of Arent Fox, LLP, New York, New York, and Elias C. Schwartz of Elias C. Schwartz, PLLC, Great Neck, New York, for appellant Recovery Racing, LLC, d/b/a Maserati of Ft. Lauderdale.

Robert D. Cultice, Felicia H. Ellsworth and Matthew C. Tymann of Wilmer Cutler Pickering Hale and Dorr, LLP, Boston, Massachusetts, and James Andrew Bertron, Jr., of Nelson Mullins Riley & Scarborough, LLP, Tallahassee, for appellee.

PER CURIAM.

In administrative proceedings, two motor vehicle dealers challenged certain policies implemented by a manufacturer and the fairness of a proposed franchise agreement. By this appeal and cross-appeal, the dealers and the manufacturer contest aspects of the agency's final order. We reverse the agency's determination that the dealers were entitled to section 320.641 fairness hearings on the challenged policies; we affirm the agency's determination of the fairness of the proposed franchise agreement in all respects.

Maserati North America, Inc. ("Maserati") is a manufacturer of automobiles. Recovery Racing, LLC d/b/a Maserati of Ft. Lauderdale and New Country Motor Cars of Palm Beach, LLC d/b/a Maserati of Palm Beach (collectively "the dealers") are dealers that sell Maserati automobiles to the general public.

Both dealers are parties to franchise agreements with Maserati which give them the non-exclusive right to purchase vehicles and parts from Maserati at wholesale for resale to the general public at their facilities. The franchise agreements expressly grant Maserati the right to set the invoice price for vehicles and to do so "upon such terms and conditions as it may establish from time to time." As found by the Administrative Law Judge, under the franchise agreements the dealers

> generate revenue on the sale (or lease) of Maserati vehicles based on: (1) the retail price paid by customers; and (2) bonuses, rebates, incentives, and other benefit programs offered by [Maserati] that are calculated or paid on a per-vehicle basis ("Program Payments").

The Program Payments are not specified in the franchise agreements or any other contractual arrangement between the parties and may change from time to time in response to market and industry conditions.

For various business reasons, Maserati decided to replace its 2016 Program Payments with a new program (the "2017 program"). On October 25, 2016, Maserati unveiled the 2017 program to its dealers at a national meeting. A comprehensive PowerPoint presentation explained the reasons behind the implementation of the 2017 program and detailed its elements. Dealers who did not attend the meeting received a hard copy of the presentation by e-mail.

The 2017 program reduced holdback payments to the dealers by 2%, but provided the dealers with incentive programs, giving them the ability to receive bonus payments worth up to 3.5% of MSRP per vehicle sold at retail. These bonus payments were to be paid out quarterly upon a dealer's meeting certain performance standards. For example, dealers were, on average, unable to complete the repair of a Maserati vehicle until three and a half days after a customer dropped the vehicle off for service; this delay was due in part to dealers not having the required parts in stock to complete the repair. To incentivize dealers to stock more parts, the 2017 program provided that dealers would receive a bonus of .5% of MSRP per retailed vehicle if they purchased a preset volume of parts and accessories in a calendar quarter.

Maserati began the 2017 program with a transition period from November 1, 2016 through March 31, 2017. During this transition period, every dealer received the maximum 5.5% bonus payment upon shipment of new vehicles to the dealer, whether or not the dealer met any of the program's performance standards.

The dealers challenged the 2017 program under section 320.641, Florida Statutes (2017). They argued that Maserati did not comply with the 90-day notice requirement of subsection 320.641(1)(a), so that the 2017 program was "voidable" at their option pursuant to subsection 320.641(1)(b). The ALJ ruled that the dealers were entitled to a hearing under section 320.641(3), that Maserati substantially complied with the notice provision,[1] and that the 2017 program was fair and not prohibited under subsection 320.641(3). In its final order, the Department of Highway Safety and Motor Vehicles adopted the ALJ's recommended order as its final order.

In its cross-appeal, Maserati contends that neither the 90-day notice nor a fairness hearing was required because the 2017 program did not amount to a modification of the dealers' franchise agreement.

As to the standard of review in this case, we have written that

> [i]n an appeal from final administrative action, this court reviews the administrative agency's findings of fact to determine whether they are supported by competent, substantial evidence. This court will not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. We review the agency's conclusions of law de novo.

*Dorcely v. State Dep't of Bus. & Prof'l Reg.*, 22 So. 3d 834, 836 (Fla. 4th DCA 2009) (citations omitted). We must set an administrative order aside or remand to the Department for further proceedings if we determine that "[t]he agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action." § 120.68(7)(d), Fla. Stat. (2017).

The contractual relationship between an automobile manufacturer and its dealers falls under sections 320.60-320.70, Florida Statutes (2017). The legislature has expressly described the legislative intent behind the statute:

---

[1] Because we hold that the dealers were not entitled to fairness hearings for which notice is required, we do not reach the question of whether the notice in this case satisfied the 90-day notice provision of section 320.641.

It is the intent of the Legislature to protect the public health, safety, and welfare of the citizens of the state by regulating the licensing of motor vehicle dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as motor vehicle dealers.

§ 320.605, Fla. Stat. (2017).[2]

As it applies to this case, the 90-day notification provision of subsection 320.641(1)(a) applies where the manufacturer intends to "modify a franchise or replace a franchise with a succeeding franchise" **and** such a franchise modification "will adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement" **or** "will substantially impair the sales, service obligations, or investment of the motor vehicle dealer." § 320.641(1)(a), Fla. Stat. (2017). Thus, if the 2017 program is not a modification of a franchise, the statute requires neither a 90-day notice nor a fairness hearing. If the 2017 program is a franchise modification, the 90-day notice is required only if it "adversely alter[s]" a dealer's "rights or obligations" under the existing franchise agreement or "substantially impair[s]" the dealer's "sales, service obligations, or investment." *Id.*

A dealer's "franchise" is the creation of a "franchise agreement." Section 320.641 is entitled "Discontinuations, cancellations, nonrenewals, modifications, and replacement of franchise agreements." For the purpose of section 320.641, the term "franchise agreement" is unambiguously defined as,

a contract, franchise, new motor vehicle franchise, sales and service agreement, or dealer agreement or any other terminology used to describe the contractual relationship between a manufacturer . . . and a motor vehicle dealer, pursuant to which the motor vehicle dealer is authorized to transact business pertaining to motor vehicles of a particular line-make.

§ 320.60(1), Fla. Stat. (2017).

---

[2] We reject the dealers' argument that the intent of sections 320.60-320.70 is to protect dealers from powerful manufacturers. Here, the legislature has declared its intent and has said nothing about protecting dealers. The focus of section 320.605 appears to be primarily to protect "citizens of the state" and to promote fair dealing in the motor vehicle sales industry.

As Maserati argues, for a manufacturer's action to amount to a modification of a franchise, it must modify the contractual franchise relationship between the manufacturer and that dealer, not a policy or program external to the contract. Contrary to the dealers' argument, the statute's use of the language "any other terminology used to describe the contractual relationship" does not expansively include every incentive program within the definition of the franchise agreement. Rather, it is a reference to the various ways a written franchise agreement might be titled.

We agree with Maserati that the 2017 program is not subject to the notice and fair hearing provision of section 320.641 because it did not modify the existing contractual relationship between Maserati and the dealers.

Only two provisions of the existing franchise agreements between Maserati and the dealers arguably relate to the policies implemented by the 2017 program. Those provisions establish the broad scope of Maserati's business judgment in setting policies that apply to the dealers. One provision states that Maserati has the right to sell products to the dealers consistent with "reasonable policies and practices established from time to time" by Maserati. The other provides that Maserati may sell its vehicles to the dealers "at such prices and upon such terms and conditions as it may establish from time to time."

Nothing in the existing franchise agreement incorporates the 2016 program which the 2017 program replaced. Nothing in the existing franchise agreement addresses the details of the 2017 program—nothing about holdback payments, nothing about a guaranteed trading margin, nothing about incentive payments. The 2017 program does not modify the existing franchise agreement; its provisions fit within the ambit of Maserati's discretion to establish policies and practices as set forth in that agreement.

To the extent that the Department relied on the "course of dealing and practice between these parties over the years" to peg the meaning of a "franchise," it impermissibly expanded the language of subsection 320.60(1); that statute relies on language and "terminology" to define the parameters of a franchise agreement, not course of conduct or implication.

The Department erroneously concluded that "it is the broader, multi-faceted franchise business relationship," rather than the written contractual relationship, "that defines the parameters of the franchise agreement between the parties." In so doing, the Department impermissibly rewrote the plain language of subsections 320.60 and 320.641. The term "franchise" in subsection 320.641(1)(a) refers to a

contractual relationship, not a "broader, multi-faceted business relationship."

Selling motor vehicles is not like selling corn flakes and milk. The industry is sensitive to external factors—competitors, interest rates, gasoline prices, and tariffs, to name a few—and the existing franchise agreement gives manufacturers the flexibility to quickly respond to changes in the marketplace without having to pass through a gauntlet of administrative proceedings. Nothing in subsections 320.641 or 320.60 so handcuffs motor vehicle manufacturers.

Because the dealers failed to show that the 2017 program modified their franchise agreements with Maserati, we reverse that portion of the final order directed at the implementation of that program and remand with directions to dismiss the dealers' petitions.

A second aspect of this appeal concerns the Department's evaluation of Maserati's proposed new franchise agreement. The dealers challenged some of the provisions as being unfair modifications of the franchise. The Department concluded that all but three of the provisions of the proposed new agreement were fair. On appeal, the dealers challenge three provisions found to be fair and in a cross-appeal Maserati is contesting the Department's conclusion as to two of the three provisions found to be unfair. We affirm the Department's evaluation of the fairness of the proposed new agreement in all respects.

*Affirmed in part, reversed in part and remanded.*

GROSS, MAY, JJ., and CARACUZZO, CHERYL, Associate Judge, concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***