DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PORSCHE CARS NORTH AMERICA, INC.,**
Appellant,

v.

**COPANS MOTORS INC.,** d/b/a **CHAMPION PORSCHE,**
Appellee.

No. 4D21-758

[May 4, 2022]

Appeal from the Division of Administrative Hearings and the Department of Highway Safety and Motor Vehicles; L.T. Case Nos. HSMV MS-18-1677 and DOAH19-0177.

Beverly A. Pohl of Nelson Mullins, Fort Lauderdale, and James Andrew Bertron, Jr., of Nelson Mullins, Tallahassee, and Owen H. Smith and Michael D. Educate of Barack Ferrazzano Kirschbaum & Nagelberg LLP, Chicago, IL, for appellant.

A. Edward Quinton, III, and Kenneth L. Paretti of Quinton & Paretti, P.A., Miami, and Roy A. Diaz and Adam A. Diaz of Diaz Anselmo & Associates, P.A., Plantation, for appellee.

### *ON APPELLANT'S MOTION FOR CLARIFICATION*

GERBER, J.

Appellant's motion for clarification cites a scrivener's error in our April 20, 2022 opinion. Appellee has no objection to us correcting the scrivener's error. Thus, we grant appellant's motion for clarification, and substitute the following opinion in place of our April 20, 2022 opinion.

Porsche Cars North America, Inc. ("the licensee") appeals from a Department of Highway Safety and Motor Vehicles ("the Department") final order in favor of Copans Motors, Inc. d/b/a Champion Porsche ("the dealer"). The Department's final order adopted an administrative law judge's findings and concluded that the licensee's reassignment of certain zip codes within the dealer's "primary area of responsibility" ("PAR") constituted a franchise modification, requiring the licensee to have

followed the notice and hearing procedures of the Florida Motor Vehicle Dealer Act, sections 320.60–.70, Florida Statutes (2020) ("the Dealer Act").

On appeal, the licensee primarily argues the Department's final order conflicts with *Recovery Racing, LLC v. Maserati North America, Inc.*, 261 So. 3d 600 (Fla. 4th DCA 2019). In *Maserati*, we held that the term "franchise" in the Dealer Act refers to "the written contractual relationship" which "defines the parameters of the franchise agreement between the parties." *Id.* at 604. Here, the licensee argues the zip codes were not expressly stated within the parties' franchise agreement, and therefore the zip codes reassignment could not constitute a franchise modification.

We agree with the licensee's argument. Therefore, we reverse.

We present this opinion in five parts:

1. The factual background;
2. The dealer's protest petition;
3. The licensee's motion to dismiss;
4. The administrative law judge's findings adopted in the Department's final order; and
5. Our review.

## 1. *The Factual Background*

In 2016, the parties executed a written dealer agreement. The written dealer agreement includes: (1) a sales and service agreement; (2) standard provisions; (3) operating standards; and (4) three addenda. The dealer agreement contains a merger clause indicating the foregoing documents constitute the parties' entire agreement, and prohibiting modifications unless contained in a writing signed by both parties.

Regarding the PAR, the dealer agreement pertinently provides:

- "Dealer's [PAR]" means the geographical area ***designated by [Licensee] in its sole discretion from time to time*** for Dealer's Operations.

- ***[Licensee] at its discretion may designate Dealer's [PAR]*** either in an Addendum to this Agreement or ***in a Notice of [PAR] delivered to Dealer from time to time*** in accordance with the provisions of this Agreement.

2

- This Agreement does not give Dealer any exclusive right to sell or service Authorized Products in any area or territory.

- [Licensee] reserves the right to appoint other dealers of Authorized Products, whether within Dealer's [PAR] or elsewhere, as [Licensee] may determine to be necessary, appropriate, or desirable in order to achieve [Licensee's] sales and marketing plans or to provide proper levels of service to customers or prospective customers for Authorized Products.

- Dealer agrees to exert its best efforts to attain in Dealer's [PAR] the best possible sales performance for Authorized Products[.]

- Dealer may sell Authorized Products outside Dealer's [PAR], so long as all such sales are within the 50 United States. ...

However, nowhere does the dealer agreement designate the dealer's PAR by geographical area, zip codes, or any other manner. Further, the dealer agreement does not express any intention to incorporate any collateral document designating the dealer's PAR. Instead, the licensee provides its dealers with a "market master report" that includes a map by which a dealer can view its then-designated PAR.

Shortly after the parties executed the dealer agreement, the licensee notified the dealer that the dealer's designated PAR would include ninety-one zip codes in the South Florida area.

Two years later, the licensee notified the dealer that the licensee intended to remove nine of the ninety-one zip codes from the dealer's then-designated PAR.

### 2. *The Dealer's Protest Petition*

In response, the dealer filed a petition with the Department protesting the licensee's removal of five of the nine zip codes from the dealer's then-designated PAR. The petition pertinently alleged:

> ***The establishment of a ... dealer's [PAR] is part of the contractual relationship between [the licensee] and the dealer ...***
>
>     *...*

[The licensee's] modification of [the dealer's] PAR constitutes an adverse modification to the Dealer Agreement[] in violation of Florida Statute §320.64(9)[,] ... adversely alters the rights and obligations of [the dealer] under its existing Dealer Agreement[,] [and] substantially impairs the sales, service obligations, and investment of [the dealer].

...

Additionally, in removing the [disputed] Zip Codes from [the dealer's] PAR, [the licensee] modified the Dealer Agreement[] without following the procedures set forth in Florida Statute §320.641. [The dealer] seeks a declaration that [it] has declared [the licensee's] PAR modification void as provided in Florida Statute §320.641(1)(b) and pursuant to [the dealer's] declaration, [the] modification is void and of no force or effect.

(emphases added; paragraph numbering omitted).

As seen above, the dealer's protest petition relied upon sections 320.64(9) and 320.641, Florida Statutes (2020). Section 320.64(9) provides:

A licensee is prohibited from ... threaten[ing] to modify or replace, or ha[ving] modified or replaced, a franchise agreement with a succeeding franchise agreement which would adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement or which substantially impairs the sales, service obligations, or investment of the motor vehicle dealer.

§ 320.64(9), Fla. Stat. (2020).

Section 320.641 pertinently provides:

(1)(a) [A] ... licensee shall give written notice to the motor vehicle dealer and the department ... of the licensee's intention to modify a franchise ..., which modification ... will adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement or will substantially impair the sales, service obligations, or investment of the motor vehicle dealer, at least 90 days before

4

the effective date thereof, together with the specific grounds for such action.

(b)  The failure by the licensee to comply with the 90-day notice period and procedure prescribed herein shall render voidable, at the option of the motor vehicle dealer, any … modification … of any franchise agreement. …

….

(3)  Any motor vehicle dealer who receives a notice of intent to … modify … may, within the 90-day notice period, file a petition … for a determination of whether such action is an unfair or prohibited … modification ….  A modification … is unfair if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; or is not undertaken for good cause.  The … licensee shall have the burden of proof that such action is fair and not prohibited.

§ 320.641(1)(a)-(b), (3), Fla. Stat. (2020).

The dealer's protest petition requested the Department to make three determinations:

(1) … [The licensee] has failed to comply with the [90-] day notice period and procedure … and [the dealer] has effectively exercised its option to declare the PAR modification void and the Department finds that [the licensee's] modification of [the dealer's] PAR, seeking to eliminate the [subject] Zip Codes is void … [;]

(2)  [The licensee's] modification of [the dealer's] PAR is unfair and accordingly, of no force or effect[; and]

(3) [The licensee's] modification of [the dealer's] PAR is prohibited and accordingly, of no force or effect.

### 3. *The Licensee's Motion to Dismiss*

The licensee filed a motion to dismiss the dealer's protest petition.  The licensee's motion to dismiss argued:

Under [*Maserati*], [the licensee's] change to [the dealer's] PAR is not a "modification" of the franchise agreement unless

5

it changed the terms of the parties' existing written contract. … Here, the parties' franchise agreement … according to its plain language (i) does not designate or assign any PAR to [the dealer], (ii) expressly states that [the dealer] has no exclusive right to sell or service [the licensee's] vehicles in any particular geographic area or territory, and (iii) most importantly, expressly gives [the licensee] "sole discretion" to assign and adjust [the dealer's] PAR "*from time to time*," as [the licensee] sees fit. (emphasis added) …. It simply cannot be a modification of the existing Franchise Agreement for [the licensee] to change something that is not within the Franchise Agreement and that the Franchise Agreement expressly allows [the licensee] to change.

### *4. The Administrative Law Judge's Findings Adopted in the Department's Final Order*

After a hearing, an administrative law judge issued the following pertinent findings of fact and conclusions of law:

[T]he PAR provides the basis for evaluating the effectiveness of a dealer's performance in terms of its … sales in its assigned area, and … delineates the area within which a dealer may advertise and exclude the advertising of competing dealers. By these means, the PAR enables [the licensee] to police its dealers to ensure that they devote their efforts, not to unproductive intrabrand competition, but to maximizing … sales in their respective PARs. …

….

*Due to its central role in establishing enforceable obligations imposed upon the dealer by [the licensee], the PAR, as defined in the annual Market Master Report, is part of the contract between the parties ….*

[T]he … Dealer Agreement[] impose[s] PAR-based sales responsibilities on [the dealer]. The Standard Provisions imposes the duty on [the dealer] to use its best efforts to produce the best sales performance in its PAR. The Operating Standards imposes the duty on [the dealer] to maximize the sales potential of its PAR …. These provisions are substantial, enforceable duties or constituent elements of duties that go to

6

the heart of the franchise agreement, and ***their enforcement necessitates the identification of the PAR***.

... At no time during their long association has either party ever had the slightest doubt as to the definition of [the dealer's] PAR or its importance in their contract or the precise extent of the proposed modification; at bottom, ***[the licensee's] posture in this case is attempting to shield from the Department's regulatory jurisdiction the contractual provision defining the PAR***.

....

(emphases added; paragraph numbering deleted).

The Department's final order adopted those portions of the administrative law judge's findings of fact and conclusions of law quoted above. The final order then declared void the licensee's proposed franchise agreement modification of certain zip codes pursuant to section 320.641(1)(b).

The licensee's appeal followed.

### 5. *Our Review*

In *Maserati*, we set forth our standards of review:

[T]his court reviews [an] administrative agency's findings of fact to determine whether they are supported by competent, substantial evidence. This court will not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. [This court] review[s] the agency's conclusions of law de novo.

261 So. 3d at 603. *See also Dixon v. City of Jacksonville*, 774 So. 3d 763, 765 (Fla. 1st DCA 2000) ("[T]he construction of statutes, ... contracts, or other written instruments is a question of law that is reviewable *de novo* ....").

Applying the foregoing standards of review to the instant case, we reverse the Department's final order. Our decision is controlled by *Maserati*, which we examine in greater detail before explaining its application here. We also will distinguish a Wisconsin case addressing the same issue.

7

### a. *Maserati*

In *Maserati*, two motor vehicle dealers were parties to franchise agreements with Maserati which gave the dealers the non-exclusive right to purchase vehicles and parts from Maserati at wholesale for resale to the general public at their facilities. *Id.* at 601-02. The franchise agreements expressly granted Maserati the right to set the invoice price for vehicles and to do so "upon such terms and conditions as it may establish from time to time." *Id.* at 602. Under the franchise agreements, the dealers generated revenue on the sale (or lease) of Maserati vehicles based on: (1) the retail price paid by customers; and (2) bonuses, rebates, incentives, and other benefit programs offered by Maserati that were calculated or paid on a per-vehicle basis ("Program Payments"). *Id.* The Program Payments were not specified in the franchise agreements or any other contractual arrangement between the parties. *Id.*

For various business reasons, Maserati decided to replace its 2016 Program Payments with a new program (the "2017 program"). *Id.* Maserati unveiled the 2017 program to its dealers at a national meeting ahead of the new program's implementation. *Id.* A comprehensive PowerPoint presentation explained the reasons behind the implementation of the 2017 program and detailed its elements. Dealers who did not attend the meeting received a hard copy of the presentation by e-mail. *Id.*

The two dealers referenced above challenged the 2017 program under section 320.641, Florida Statutes (2017). *Id.* The dealers argued that Maserati did not comply with section 320.641(1)(a)'s 90-day notice requirement, so that the 2017 program was "voidable" at the dealers' option pursuant to subsection 320.641(1)(b). *Id.*

An administrative law judge ruled that although Maserati had substantially complied with section 320.641(1)(a)'s 90-day notice requirement (presumably through its advance dissemination of the 2017 program), the dealers were entitled to a fairness hearing under section 320.641(3). *Id.* The Department of Highway Safety and Motor Vehicles adopted the administrative law judge's recommended order as its final order. *Id.*

On appeal, Maserati contended that neither section 320.641's 90-day notice period nor its fairness hearing was required because the 2017 program did not modify the dealers' franchise agreement. *Id.* We agreed with Maserati's argument, reasoning in pertinent part:

For the purpose of section 320.641, the term "franchise agreement" is unambiguously defined as,

> a contract, franchise, new motor vehicle franchise, sales and service agreement, or dealer agreement or any other terminology used to describe the contractual relationship between a [licensee] ... and a motor vehicle dealer, pursuant to which the motor vehicle dealer is authorized to transact business pertaining to motor vehicles of a particular line-make.

§ 320.60(1), Fla. Stat. (2017).

As Maserati argues, for a [licensee's] action to amount to a modification of a franchise, it must modify the contractual franchise relationship between the [licensee] and that dealer, not a policy or program external to the contract. ...

....

Only two provisions of the existing franchise agreements between Maserati and the dealers arguably relate to the policies implemented by the 2017 program. Those provisions establish the broad scope of Maserati's business judgment in setting policies that apply to the dealers. One provision states that Maserati has the right to sell products to the dealers consistent with "reasonable policies and practices established from time to time" by Maserati. The other provides that Maserati may sell its vehicles to the dealers "at such prices and upon such terms and conditions as it may establish from time to time."

Nothing in the existing franchise agreement incorporates the 2016 program which the 2017 program replaced. Nothing in the existing franchise agreement addresses the details of the 2017 program .... The 2017 program does not modify the existing franchise agreement; its provisions fit within the ambit of Maserati's discretion to establish policies and practices as set forth in that agreement.

....

The Department erroneously concluded that "it is the broader, multi-faceted franchise business relationship,"

9

rather than the written contractual relationship, "that defines the parameters of the franchise agreement between the parties." In so doing, the Department impermissibly rewrote the plain language of subsections 320.60 and 320.641. The term "franchise" in subsection 320.641(1)(a) refers to a contractual relationship, not a "broader, multi-faceted business relationship."

*Id.* at 603-04. Based on the foregoing reasoning, we remanded with directions for the Department to dismiss the dealers' petitions. *Id.* at 604.

### b. ***Applying Maserati's Reasoning Here***

*Maserati*'s reasoning applies equally here. Regarding the PAR, the dealer agreement establishes the broad scope of the licensee's business judgment in designating the PAR from time to time:

- "Dealer's [PAR]" means the geographical area ***designated by [Licensee] in its sole discretion from time to time*** for Dealer's Operations.

- ***[Licensee] at its discretion may designate Dealer's [PAR]*** either in an Addendum to this Agreement or ***in a Notice of [PAR] delivered to Dealer from time to time*** in accordance with the provisions of this Agreement.

However, nowhere does the dealer agreement designate the dealer's PAR by geographical area, zip codes, or any other manner. Further, the dealer agreement does not express any intention to incorporate any collateral document designating the dealer's PAR. *See Kantner v. Boutin*, 624 So. 2d 779, 781 (Fla. 4th DCA 1993) ("[T]here must be some expression in the incorporating document ... of an intention to be bound by the collateral document ...."). While the licensee's market master reports show the dealer's designated PAR at any given time, those reports are neither referenced in nor incorporated into the dealer agreement. In other words, contrary to the administrative law judge's findings and the Department's final order, those reports are not "part of the contract between the parties."

Thus, the licensee's removal of certain zip codes from the dealer's then-designated PAR did not modify the franchise agreement. Rather, the removal was within the licensee's "sole discretion" to designate the dealer's PAR "from time to time." As the licensee aptly phrased in its motion to dismiss the dealer's protest petition:

It simply cannot be a modification of the existing Franchise Agreement for [the licensee] to change something that is not within the Franchise Agreement and that the Franchise Agreement expressly allows [the licensee] to change.

....

[J]ust as Maserati's franchise agreements did not designate any particular pricing or payment structure for its dealers, the Franchise Agreement [here] does not designate any particular territory for [the dealer's] PAR. The Franchise Agreement thus could not be modified in any way by a change to [the dealer's] PAR, because [the licensee's] decision to change a PAR is within the ambit of its discretion expressly granted to it under the Franchise Agreement.

### c. *Distinguishing a Wisconsin Case*

In reaching our decision, we distinguish a Wisconsin case, *Racine Harley-Davidson, Inc. v. Wis. Div. of Hrgs. & Appeals*, 717 N.W.2d 184 (Wis. 2006), *abrogated on other grounds*, *Tetra Tech EC, Inc. v. Wis. Dep't of Rev.*, 914 N.W.2d 21 (Wis. 2018), upon which the administrative law judge and the Department relied in the final order.

In *Racine,* the Wisconsin Supreme Court held that a motorcycle dealer's territory was "an essential aspect of [its] franchise relationship" with Harley-Davidson, even though not contained in their written franchise agreement. 717 N.W.2d at 206. The *Racine* court applied a "broad" reading to the Wisconsin statute's definition of such an agreement; namely, as "encompassing the parties' description of their franchise relationship" beyond what was contained in their written contract. *Id.* at 206-07. However, the *Racine* court reasoned that the dealer's assigned territory should be deemed part of the parties' broader "franchise relationship" because the applicable Wisconsin statute: (i) required licensees to *designate in writing* the territory assigned to a motor vehicle dealer; (ii) allowed a licensee's license to be denied, suspended, or revoked if it had not *designated in writing* the territory assigned to a dealer; and (iii) prohibited changes to dealers' territories under certain circumstances. *Id.* at 207. The *Racine* court further based its broad reading on "the remedial purpose underlying the [Wisconsin] statute," which "is designed to protect ... *dealers* from unfair treatment by [licensees]." *Id.* at 208 (emphasis added).

Here, however, as the licensee's initial brief argues:

> Florida's licensing statute is different. It expressly limits a "franchise agreement" to the parties' *contractual* relationship. Although it requires a [licensee] to file a copy of its franchise agreement with [the department] (§ 320.63(3), Fla. Stat.), it does not require the licensee to designate dealer territories in the franchise agreement or otherwise. The Florida statute contains no provisions prohibiting changes to dealer territories. Nor does the Florida statute have [the] remedial purpose [of protecting dealers]. ... Thus, ... [the Department's] ... reliance on *Racine* is misplaced.

*See also Maserati*, 261 So. 3d at 603 n.2 ("We reject the dealers' argument that the intent of [the Dealer Act] is to protect dealers from powerful [licensees]. Here, the legislature ... has said nothing about protecting dealers.").

To the extent the dealer here argues that *Racine* is the better-reasoned decision over *Maserati*, or to the extent the administrative law judge and the Department found the licensee was attempting to shield its PAR designations from the Department's regulatory jurisdiction, those points essentially seek to rewrite either the Dealer Act, the arms-length agreement between the dealer and the licensee, or both. We can do neither. *See Westphal v. City of St. Petersburg*, 194 So. 3d 311, 313-14 (Fla. 2016) ("The judiciary ... is without power to rewrite a plainly written statute ..."); *Williams-Paris v. Joseph*, 329 So. 3d 775, 783 (Fla. 4th DCA 2021) ("[T]he court's task is to apply the parties' contract as written, not rewrite it under the guise of judicial construction.") (internal quotation marks and citation omitted).

### *Conclusion*

In sum, the licensee's PAR changes, rather than modifying the dealer agreement, are consistent with and implement the dealer agreement's express written terms, which give the licensee the right to designate the PAR's "geographical area ... in its sole discretion from time to time." Thus, we reverse the Department's final order, and remand for the Department to enter a final order granting the licensee's motion to dismiss the dealer's protest petition.

*Reversed and remanded with instructions.*

CONNER, C.J., and KUNTZ, J., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*